UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDAGRO S.A.,

                              Plaintiff,

                -against-

BAUCHE S.A.,

                              Defendant.

**MEMORANDUM OPINION
AND ORDER**

08 Civ. 10388 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

  In this maritime attachment action, Plaintiff Indagro S.A. ("Indagro")
alleges that it entered into a contract with Defendant Bauche S.A. ("Bauche") to sell,
transport by chartered vessel, and deliver a cargo of fertilizer to Bauche.  Indagro claims
that it fulfilled its obligations under the contract, but that Bauche failed to pay it
demurrage due under the contract.[1]  (Cmplt. ¶¶ 4, 6, 9, 11, 16, 18-19, 22-24 & Ex. A)

  Indagro commenced this action on December 1, 2008 by filing a verified
complaint and supporting attorney affidavit.  Indagro sought an <u>ex parte</u> Rule B Order
authorizing attachment of "all tangible or intangible property of [Bauche] up to and
including $804,219.90 . . . ."[2]  (Cmplt. Prayer for Relief ¶ b)  The requested Rule B
Order for Process of Maritime Attachment and Garnishment (the "Rule B Order") was
issued

---

[1] "Demurrage" is "[l]iquidated damages owed by a charterer to a shipowner for the
charterer's failure to load or unload cargo by an agreed time."  <u>Black's Law Dictionary</u>
498 (9th ed. 2009) ("<u>Black's</u>").

[2] The requested amount included $581,875.00 that Bauche allegedly owed under the
contract, $100,000 as reimbursement for costs and legal expenses Indagro expected to
incur in arbitrating its claim against Bauche, and $122,344.90 in interest that Indagro
expected to be awarded.  (Cmplt. ¶¶ 23, 32)

on December 3, 2008,[3] and pursuant to that order, $804,219.90 of Bauche's funds have been restrained by banks in this District.  (See Docket No. 10)

On April 21, 2009, Bauche moved by order to show cause to vacate the Rule B Order pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and Local Admiralty Rule E.1.  (Docket No. 10)  On May 13, 2009, this Court held a hearing on Bauche's motion. For the reasons stated below, Bauche's motion is GRANTED and the Rule B Order is VACATED.

## DISCUSSION

To obtain a Rule B order, a plaintiff must allege facts that make it plausible to believe that:  "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment."  Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Peninsula Petroleum Ltd. v. New Econ Line PTE Ltd., No. 09-Civ.-1375(PGG), 2009 WL 702840, at *1 (S.D.N.Y. Mar. 17, 2009) (plaintiff in maritime case must at least meet pleading standard of Federal Rules of Civil Procedure, "which require[s] a plaintiff to . . . allege 'enough facts to state a claim to relief that is plausible on its face'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007))).

Once the defendant's property is attached pursuant to a Rule B order, Rule E(4)(f) provides that the defendant "shall be entitled to a prompt hearing at which the

---

[3] The Rule B Order was signed by the Part I judge.

2

plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."  Fed. R. Civ. P. Supp. AMC R. E(4)(f). "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E."  Aqua Stoli, 460 F.3d at 445 n.5.  A "motion to vacate . . . is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met," Chiquita Int'l Ltd. v. MV Bosse, 518 F. Supp. 2d 589, 597 (S.D.N.Y. 2007) (citing Aqua Stoli, 460 F.3d at 445), and while "[m]aritime plaintiffs . . . are not required to prove their case at this stage," SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06 Civ. 15375 (KMK), 2007 WL 831810, at *2 (S.D.N.Y. Mar. 15, 2007), the Court may "vacate the judgment [granting an attachment] if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met."  Williamson v. Recovery Limited Partnership, 542 F.3d 43, 52 (2d Cir. 2008).  "Superficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate." Id.

Here, Bauche argues that vacatur is warranted because Indagro has not shown that it has a valid prima facie admiralty claim against Bauche.  (Def. Br. at 2-3) Indagro argues that the Court is barred from considering this question under the doctrine of issue preclusion, and that its alleged claim under the sale of goods contract at issue is a valid prima facie admiralty claim.  (Pltf. Br. at 6-20)  For the reasons stated below, vacatur is warranted here.

I.      **BACKGROUND**

    A.      **The Contract At Issue**

Indagro's Verified Complaint contains, <u>inter alia</u>, the following allegations:  By contract dated November 22, 2007 (the "Contract"), Indagro agreed to sell Bauche 21,000 metric tons of fertilizer (specifically, "NPK 8-24-24-9") on a "Cost and Freight" basis.[4]  (Cmplt. ¶¶ 4, 6 & Ex. A)  The Contract contains provisions for calculating laytime, and also contains a clause entitled "Demurrage/Despatch" that states in its entirety:  "As per Charter Party of the performing vessel to be advised upon nomination."[5]  (Cmplt. ¶¶ 6, 9, 11 & Ex. A)  The Contract provides that it is governed by English law and that disputes between the parties are to be resolved by arbitration in London.  (Cmplt. ¶¶ 27-28 & Ex. A)

Indagro fulfilled its obligations under the Contract by loading the fertilizer on the vessel M/V Swift Splash (the "Vessel"), which it had nominated and Bauche had accepted.  (Cmplt. ¶¶ 16, 18-19)  The Vessel was on demurrage for 15 days, 20 hours and 17 minutes at the discharge port, as calculated under the terms of the contract.  (<u>Id.</u> ¶ 22-23)  Indagro alleges that Bauche owes it $581,875.00 under the demurrage clause of the Contract, which Bauche has failed to pay despite due demand.  (<u>Id.</u> ¶¶ 23-24)

---

[4] "Cost and freight" is "[a] mercantile-contract term allocating the rights and duties of the buyer and the seller of goods with respect to delivery, payment, and risk of loss, whereby the seller must (1) clear the goods for export, (2) arrange for transportation by water, and (3) pay the costs of shipping to the port of destination." <u>Black's</u> 399.

[5] "Laytime" is the "[t]ime allowed by a voyage charterparty for the charterer to load or unload cargo." <u>Black's</u> 969.  "Despatch" (or "dispatch") is "[a]n amount paid by a shipowner to a vessel's charterer if the vessel's cargo is unloaded at the port sooner than provided for in the agreement between the charterer and the shipowner." <u>Black's</u> 539.

### B.    Related Proceedings

The instant action is not the only action between Indagro and Bauche in this District.  In a case initiated on November 21, 2008 and assigned to Judge Batts, Indagro asserted a similar claim against Bauche under a nearly identical contract.  (Def. Br. at 2; De Klerk Aff. ¶ 4; De Klerk Exs. A & B)  As in this case, Indagro obtained a Rule B attachment order, which Bauche moved to vacate.  (Def. Br. at 2)  On January 6, 2009, Judge Batts found that the contract was maritime and denied Bauche's motion to vacate in an oral decision.  (Reilly Aff. Ex. 10 (hereafter "1/6/09 Tr.") at 19:2-24)

## II.    WHETHER BAUCHE IS PRECLUDED
## FROM SEEKING VACATUR

As a preliminary matter, Indagro contends that Judge Batts' decision precludes Bauche from litigating the issue of whether the Contract here is a maritime contract.  (Pltf. Br. at 6-8)  Under the doctrine of issue preclusion, a party may not re-litigate an issue where:  "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89 (2d Cir. 2002) (internal quotation omitted).  Because Indagro has not shown that the first or fourth elements of issue preclusion are met here, Bauche is not barred from arguing in this action that the Contract is not a maritime contract.

### A.    The Issues Are Not Identical

Indagro has not addressed the question of whether the issue before this Court is identical to that one decided by Judge Batts, except to assert that in both cases,

Bauche "raised" the issue of "the existence of admiralty jurisdiction over the same form contract and same type of demurrage dispute." (Pltf. Br. at 7) A more searching inquiry is necessary than that posited by Indagro. For the "identical issue" requirement to be met, it is not enough that the second action involves a question of law that was raised and decided in the first action. The actions must also present the same material facts. Issue preclusion

> does not apply . . . when the essential facts of the earlier case differ from the instant one, even if they involve the same legal issues. When the facts essential to a judgment are distinct in the two cases, the issues in the second case cannot properly be said to be identical to those in the first, and [issue preclusion] . . . is inapplicable.

Environmental Defense v. United States Environmental Protection Agency, 369 F.3d 193, 202 (2d Cir. 2004); see also Faulkner v. Nat'l Geographic Enter. Inc., 409 F.3d 26, 37 (2d Cir. 2005) ("Use of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts . . . remain unchanged.' Commissioner v. Sunnen, 333 U.S. 591, 599-600, 68 S. Ct. 715 (1948)."); U.S. v. Alcan Aluminum Corp., 990 F.2d 711, 719 (2d Cir. 1993) ("[A] court should decline to give preclusive effect to a prior judgment if there have been changes . . . in . . . the factual predicates essential to that prior judgment.").

Judge Batts relied on four factual findings in explaining her decision that the contract before her was a "maritime contract": (1) the contract "involve[d] transportation by sea" (1/6/09 Tr. at 19:3-4); (2) "most of the contract talks about the discharge, the demurrage, and the arbitration to be according to the laws of the London Maritime Arbitration Association" (id. at 19:4-6); (3) there was "evidence that . . .

6

[Indagro] had to pay demurrage" (id. at 19:10-11); and (4) "the incorporation in the contract of the BIMCO ISPS clause seemed to create even a relationship between the defendant and the shipowner" (id. at 19:17-19).[6]  She stated that "for all of these reasons, . . . there is a maritime contract," and did not otherwise indicate what weight she gave to any of the factual findings supporting her decision. (Id. at 19:20-21)

The first, second and fourth factual findings listed by Judge Batts relate solely to the terms of the contract, and therefore are the same as in this case.  The third fact, however, is not present here:  in this case, there is no evidence (nor even an allegation) that Indagro paid demurrage to the Vessel's owner, or that such a payment has even been demanded by the shipowner.  Because one of the key facts on which Judge Batts relied is different from the factual record presented in this action, the issue here is not "identical" to the issue before Judge Batts, and issue preclusion does not apply.  See Environmental Defense, 369 F.3d at 202.

**B.**     **Judge Batts' Decision Is Not Sufficiently Final**

Indagro also has not shown that Judge Batts' decision is sufficiently final to be considered a "final judgment" for purposes of the fourth requirement of issue preclusion.  Marvel Characters, 310 F.3d at 288-89.  A decision is sufficiently final for issue preclusion purposes where litigation of the issue in the first case "reached such a stage that a court sees no really good reason for permitting it to be litigated again." Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir. 1961)

---

[6] Judge Batts appears to have been referring to the "BIMCO ISPC" clause at the end of both contracts, which requires the buyer to provide certain information to the ship's security officer in order to facilitate compliance with the International Ship and Port Facility Security Code.  (5/13/09 Tr. at 15:25)

(Friendly, J.).  Whether a decision meets this standard "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review."  Id.

   "[T]he unavailability of appellate review . . . strongly militates against giving . . . [an earlier decision] preclusive effect."  Medisys Health Network, Inc. v. Local 348-S United Food & Commercial Workers, AFL-CIO & CLC, 337 F.3d 119, 124 (2d Cir. 2003); see also Covanta Onondaga Ltd. v. Onondaga County Resource, 318 F.3d 392, 397 (2d Cir. 2003) (observing, without deciding that, "it is highly unlikely" that a remand order "has preclusive effect" if it is "not appealable").  The Second Circuit has explained the importance of the availability of review as follows:

> The doctrine of collateral estoppel [(issue preclusion)] represents a choice between the competing values of correctness, uniformity, and repose.  Reexamination of an issue may well demonstrate that its previous resolution was incorrect, as a result of such factors as better evidence, better advocacy, or better decision-making.  [However,] . . . judicial efficiency demands that there be an end to litigation at some point.  Our system resolves the conflict among values by holding that an issue determined in one proceeding normally may not be reexamined.
>
> This resolution elevates uniformity and repose above correctness.  In recognition of this consequence the doctrine of collateral estoppel has limitations to assure that the precluded issue was carefully considered in the first proceeding.  . . .
>
> Appellate review plays a central role in assuring the accuracy of decisions.  Thus, although failure to appeal does not prevent preclusion, . . . inability to obtain appellate review, or the lack of review once an appeal is taken, does prevent preclusion.

Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986).  In accord with this reasoning, in Kay-R Elec. Corp. v. Stone & Webster Const. Co., Inc., 23 F.3d 55 (2d Cir.

1994), the Second Circuit stated that under the <u>Lummus</u> standard, a decision denying summary judgment does not meet the finality requirement because "[t]here is . . . no opportunity to review a denial of a motion for summary judgment." <u>Id.</u> at 59.

Like a decision denying summary judgment, a decision denying a motion to vacate a maritime attachment is not appealable as of right. <u>See</u> <u>Swift & Co. Packers v. Compania Comonbiana Del Caribe S.A.</u>, 339 U.S. 684, 689, 70 S.Ct. 861, 865 (1950) (holding that an appellate court has jurisdiction to hear an appeal from a district court's order vacating a maritime attachment arresting a vessel, and stating that "[t]he situation is quite different where an attachment is upheld pending determination of the principal claim").[7]  The fact that Judge Batts' decision was not appealable weighs strongly against applying issue preclusion here.

### III.   WHETHER INDAGRO HAS SHOWN THAT IT IS ENTITLED TO A RULE B ORDER

Because issue preclusion does not bar Bauche's motion, the Court must consider the merits of Indagro's argument that the Rule B order was properly issued because Indagro "has a valid prima facie admiralty claim against" Bauche. <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 445 (2d Cir. 2006).  Indagro argues in the alternative that:  (1) the Contract is appropriately characterized as a "maritime" contract, or (2) Bauche owes Indagro money under the "demurrage"

––––––––––––––––––––––––

[7] <u>See also</u> <u>Petroleos Mexicanos Refinacion v. M/T King A (EX-TBILISI)</u>, 377 F.3d 329, 331-38 (3d Cir. 2004) (finding no basis for exercising jurisdiction over appeal from interlocutory order denying motion to vacate a maritime attachment, in the form of a warrant of arrest, brought under Supplemental Rule E(4)(f)); <u>Consub Delaware LLC v. Schahin Engenharia Limitada</u>, 543 F.3d 104, 107 (2d Cir. 2008) (noting that court had jurisdiction over appeal of decision denying motion to vacate because district court had certified an interlocutory appeal under 28 U.S.C. § 1292(b)).

provision of the Contract – which Indagro asserts is not merely an indemnity provision[8] – and Bauche's obligation to pay that money is a severable "maritime" obligation .  (Pltf. Br. at 8-20)  Neither argument is persuasive.

     **A.**       **Applicable Legal Standards**

In determining whether admiralty jurisdiction exists for a breach of contract claim, the Second Circuit has directed district courts to "look to the contract's 'nature and character to see whether it has reference to maritime service or maritime transactions.'" Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307, 312 (2d Cir. 2005) (quoting Norfolk S. Ry. Co. v. James Kirby, Pty Ltd., 543 U.S. 14, 24, 125 S. Ct. 385, 393 (2004)) (citation and internal quotation marks omitted).

Admiralty jurisdiction does not arise simply because a contract refers to a ship, or to the transportation of goods by ship.  "In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping."  1 Benedict on Admiralty § 182.  "The touchstone of admiralty jurisdiction is whether the services rendered are maritime in nature."  Efko Food Ingredients Ltd. v. Pacific Inter-link SDN BHD, 582 F. Supp. 2d 466, 470 (S.D.N.Y. 2008).

-----

[8] As explained below (see infra at 15), if the demurrage clause in the contract is merely an indemnity provision, Indagro's claim against Bauche is not ripe, because Indagro has not alleged that the shipowner has demanded demurrage, much less that Indagro has paid such a claim.

With respect to contracts that are "mixed" – those that contain both maritime and non-maritime obligations – the Second Circuit "has recognized 'two exceptions to the general rule that "mixed" contracts fall outside admiralty jurisdiction.'" Folksamerica, 413 F.3d at 314 (quoting Transatlantic Marine Claims Agency, Inc v. Ace Shipping Corp., 109 F.3d 105, 109 (2d Cir. 1997)).  One exception applies where "'the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract.'"  Folksamerica, 413 F.3d at 314 (quoting Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 555 (2d Cir. 2000)).  The second exception "allows courts to exercise admiralty jurisdiction where the non-maritime elements are 'merely incidental' to the maritime ones." Folksamerica, 413 F.3d at 314 (quoting Transatlantic Marine Claims Agency, 109 F.3d at 109).

"Federal law generally governs questions as to the validity of Rule B attachments," Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd., 759 F.2d 262, 265 (2d Cir. 1985), and courts in this District look to federal law to determine whether a plaintiff's claim is "maritime" under the case law described above.  Euro Trust Trading S.A. v. Allgrains U.K. Co., No. 09-Civ.-04483(GEL), 2009 WL 2223581, at *3 (S.D.N.Y. July 27, 2009) ("[W]hether a claim is properly considered a maritime claim for purposes of the applicability of Rule B is a purely procedural issue, and thus is governed by federal law irrespective of the law to be applied to any underlying claims.").

Where the question is not whether the claim is maritime in nature, but rather whether the plaintiff has pled a "valid" claim at all, courts in this District have considered whether the plaintiff alleged a prima facie claim under the substantive law governing the parties' dispute.  See Padre Shipping, Inc. v. Yong He Shipping, 553 F.

Supp. 2d 328, 333 (S.D.N.Y. 2008) (considering evidence that plaintiff had valid claim

under Chinese law, which governed the dispute); Sonito Shipping Co. Ltd. v. Sun United

Maritime Ltd., 478 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2007) (looking to English law,

which was the law of the parties' contract, to determine whether plaintiff's claim was

unripe and therefore invalid); Ice Flake Maritime Ltd. v. Westcoast AS, No. 07-Civ.-

2002(PKC), 2007 WL 2979471, at *1 (S.D.N.Y. Oct. 11, 2007) (considering evidence

that plaintiff had valid claim under Norwegian law, which would "plausibl[y]" govern

dispute); OCI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., No. 06-Civ.-

9441(RWS), 2007 WL 1834711, at *6 (S.D.N.Y. June 26, 2007) (holding that attachment

could not be sustained as to claim for wrongful arrest of vessel, because plaintiff had not

met its burden of showing what law would govern that claim or that its allegations stated

a claim under the applicable law); T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,

415 F. Supp. 2d 310, 315-16 (S.D.N.Y. 2006) (considering whether plaintiff had shown

that its claim had clearly accrued – and was therefore valid – under English law, which

governed the contract).

　　　　　　Therefore, English law – the law of the Contract – governs the question of

whether Indagro has pled a valid prima facie claim that is not merely a claim for

indemnification, and federal law governs the question of whether Indagro's claim is

"maritime" in nature.[9]

_____

[9] While some courts in this District have suggested that federal law should govern both
questions, it does not appear that any have looked solely to federal law to determine
whether a valid claim had been pled.  See Harley Mullion & Co. Limited v. Caverton
Marine Ltd., No. 08-Civ.-5435(BSJ), 2008 WL 4905460, at **2-4 (S.D.N.Y. Aug. 7,
2008) (stating that it would be inappropriate to look to the substantive law governing the
parties' dispute in determining whether the plaintiff had pled a valid prima facie maritime

**B.**     <u>**The Contract Is Not A Maritime Contract**</u>

Here, the Contract cannot properly be characterized as a maritime contract that solely contains maritime obligations.  The Contract's subject matter is the sale and purchase of fertilizer.  Neither fertilizer nor its sale relates directly to the operation of a vessel or its navigation.  While the Contract contains a number of terms concerning the ocean transportation of the fertilizer, it is well established that "a commodity, sale and purchase contract – even if the contract requires [as here] maritime transport relating to the shipment of the commodity – is not maritime in nature."  <u>Efko Food Ingredients</u>, 582 F. Supp. 2d at 470 (rejecting argument that contract and breach claim were maritime in nature "because the defendant was required [by the contract] to charter ships to pack up and deliver the palm olein [that was the subject of the contract]"); <u>see also</u> <u>Aston Agro-Industrial AG v. Star Grain Ltd.</u>, No. 06-Civ.-02805(GBD), 2006 WL 3755156, at *3 (S.D.N.Y. Dec. 20, 2006) ("[T]he contracts are not maritime contracts because their primary objective was not the transportation of goods by sea.  Instead, their primary objective was, undoubtedly, the sale of wheat.  That the wheat was transported on a ship does not make the contracts maritime contracts . . . ."); <u>Shanghai Sinom Import & Export</u>

_____

claim, but only reaching question of whether claim was maritime in nature); <u>Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka (Private) Ltd.</u>, 606 F. Supp. 2d 391, 395-97 (S.D.N.Y. 2009) (citing <u>Harley Mullion</u> in support of statement that courts in this District are "deeply divided on th[e] issue" of what law governs the question of whether the plaintiff has pled a "valid prima facie maritime claim," and discussing whether the plaintiff's claim was valid under English and American law); <u>Beluga Chartering Gmbh v. Korea Logistics Sys. Inc.</u>, 589 F. Supp. 2d 325, 327-28 (S.D.N.Y. 2008) (observing that whether a claim is maritime depends on federal law, and citing <u>Harley Mullion</u> for proposition that "[t]here is some disagreement within this District as to whether the question of the claim's further 'validity' is governed by federal law . . . or the substantive law that will govern the underlying action," but finding that plaintiff asserted valid claim under either English or American law).

v. Exfin (India) Mineral Ore Co., 2006 AMC 2950, 2951 (S.D.N.Y. Oct. 5, 2006) ("a

contract for a land-based sale of goods is not maritime merely because the seller agrees to

ship the goods by sea to the buyer"); Lucky-Goldstar, Int'l (America) Inc. v. Phibro

Energy Int'l, Ltd., 958 F.2d 58, 59 (5th Cir. 1992) ("A principal purpose of the contract

was the land-based sale of over a thousand metric tons of toluene.  It is well-established

that such a sale of goods by itself would not be 'maritime' merely because the seller

agrees to ship the goods by sea to the buyer.").

> ### C.   Indagro Has Not Shown That Its Claim
> ### Is Based on a Severable Maritime Obligation

Indagro argues in the alternative that the Contract is a "mixed" contract

that contains both maritime and non-maritime obligations, and that the first Folksamerica

exception applies here because Bauche's breach relates to a severable maritime

obligation – i.e., the obligation to pay demurrage.[10]  (Pltf. Br. at 16-20)  Specifically,

Indagro claims that Bauche has a stand-alone maritime obligation under the Contract's

demurrage provision to make a payment to Indagro at the demurrage rate set forth in the

charter-party agreement for the Vessel – but calculated under the Contract's laytime

provisions – regardless of whether the Vessel's owner has demanded that Indagro pay

demurrage or whether Indagro has met such a demand.  (Pltf. Br. at 21-22)  Bauche, on

the other hand, asserts that to the extent it has an obligation under the "demurrage"

---

[10] Indagro also asserts in passing (Pltf. Br. at 17) that the second exception described in
Folksamerica could apply here, because the "non-maritime elements [of the Contract] are
'merely incidental' to the maritime ones."  Folksamerica, 413 F.3d at 314.  The
Folksamerica court explained that this exception is best understood as applying when the
"primary or principal objective" of the contract is maritime in nature – e.g., establishing
policies of maritime insurance. Id. at 315.  Here, the principal objective of the Contract is
clearly to accomplish the sale of fertilizer, which is non-maritime, and therefore the
second exception does not apply.

provision of the Contract, its obligation is merely to indemnify Indagro for any demurrage paid to the owner.  (Def. Br. at 4)  Therefore, Bauche asserts, Indagro does not have a valid maritime claim because it has not in fact paid demurrage.  (Id. at 19-21)

If Bauche is correct, the attachment must be vacated.  Numerous courts in this district have held that when the defendant's obligation arises under an indemnity provision governed by English law, and payment of the underlying claim has not been made to or demanded by the third party, the plaintiff's claim is an unripe contingent indemnity claim that will not support the exercise of maritime jurisdiction. See, e.g., Aosta Shipping Co. Ltd. v. OSL S.S. Corp., 594 F. Supp. 2d 396, 397-98 (S.D.N.Y. 2009) (holding that plaintiff asserted contingent indemnity claim because it had "yet to incur any liability," and vacating Rule B attachment on the ground that "[c]ourts in this Circuit have consistently held that Rule B attachments based on contingent indemnity claims for breach of a charter party are premature because they are unripe under English law . . . and thus fail to state a proper maritime claim" (citing cases)).  Therefore, the Court will first consider whether Indagro has shown that it has anything other than a contingent indemnity claim.

### 1.    The Nature of Indagro's Claim

To defeat Bauche's motion, Indagro must "present[] some evidence showing reasonable grounds for the attachment," which in this case means that as a first step, it must present "some evidence showing reasonable grounds" for holding that it has a non-indemnity claim against Bauche under English law. [11]  Ullises Shipping Corp. v.

---

[11] See also Classic Maritime Inc. v. Limbungan Makmur SDN BHD, No. 08-Civ.-11129(JGK), 2009 WL 1024520, at *1 (S.D.N.Y. Apr. 16, 2009) (applying "reasonable grounds" test in deciding whether to vacate Rule B attachment); Williamson v. Recovery

FAL Shipping Co. Ltd., 415 F. Supp. 2d 318, 325 (S.D.N.Y. 2006), overruled on other grounds by Aqua Stoli, 460 F.3d at 445.  In Wajilam Exports (Singapore) Ptd. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275 (S.D.N.Y. 2006), the court explained that the required showing can be "compared . . . to the more familiar standard of probable cause," which "is less than a preponderance of the evidence" and "in the criminal context . . . has been described as a 'fair probability' that the asserted fact is true."  Id. at 279.

            To meet its burden of showing that the Rule B Order was proper, Indagro has submitted a conclusory declaration from an English solicitor stating that "[u]nder English law, Bauche's obligation is not simply to indemnify Indagro against any liability they might be under to the vessel owners but is an independent obligation to pay demurrage."  (Doherty Aff. ¶ 7)  In support of its argument that the Rule B order should be vacated, Bauche has submitted a similarly conclusory affidavit from its English

_____

Ltd. P'ship, No. 06-Civ.-5724(LTS), 2007 WL 102089, at **2-3 (S.D.N.Y. Jan. 16, 2007), aff'd, 542 F.3d 43 (2d Cir. 2008) (stating that "the plaintiff must demonstrate that 'reasonable grounds' exist for the attachment," and upholding attachment against defendants as to whom plaintiff offered "some evidence" that they could be held liable).

  After Aqua Stoli, some courts in this District rejected the "reasonable grounds" standard as too high, explaining that "Aqua Stoli implies that a plaintiff need not provide evidence showing that it has a claim against the defendant to satisfy its burden under Rule E(4)(f)," and thus that "[w]hile the defendant can argue that the plaintiff does not have a valid prima facie admiralty claim against the defendant, the basis of the argument cannot be that the plaintiff has not provided sufficient evidence of such a claim."  Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Committee, 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007).  However, as Judge Lynch has noted, Aqua Stoli "did not . . . discuss whether its holding had any impact on the 'reasonable grounds' inquiry as it relates to the 'valid prima facie claim' analysis."  Wajilam Exports (Singapore) Ptd. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 279 n.5 (S.D.N.Y. 2006).  Further, the Ronda Ship Management court's restrictive interpretation of Aqua Stoli – under which consideration of evidence presented by the parties was viewed as inappropriate on a motion to vacate – is no longer persuasive after the Second Circuit's decision in Williamson v. Recovery Limited Partnership, 542 F.3d 43 (2d Cir. 2008), in which the court held that the district court had not erred in vacating a Rule B attachment based on the evidence offered by the parties.  Id. at 52-53.

solicitor stating that he agrees with the points of English law in Bauche's arbitration submission, which asserts that under English law Bauche's obligation is merely to indemnify Indagro.  (Winter Aff. ¶ 4; Reilly Aff. Ex. 3 ¶ 11)

Faced with similarly conflicting expert testimony, the court in <u>T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.</u>, 415 F. Supp. 2d 310 (S.D.N.Y. 2006), held that the attachment at issue should be vacated because the plaintiff had not offered evidence making clear that its claim had accrued (and was therefore valid) under English law.  <u>Id.</u> at 316.[12]  As in <u>T&O Shipping</u>, the question of whether Indagro has a valid non-indemnity claim is "a substantive legal question which will be decided under English law in the arbitration," and is therefore a question better left to the arbitrators.  <u>Id.</u>

In light of the conflicting and conclusory expert testimony, the Court finds that Indagro has not shown even a "fair probability," <u>Wajilam</u>, 475 F. Supp. 2d at 279, that it has a valid non-indemnity claim against Bauche.[13]  Therefore, Indagro has not met its burden of showing that it has any valid prima facie claim against Bauche, other than a

---

[12] <u>T&O Shipping</u> was abrogated on other grounds by <u>Aqua Stoli</u>, 460 F.3d 434, which rejected the proposition – adopted by the <u>T&O Shipping</u> court – that a court may consider the plaintiff's need for a Rule B attachment in deciding whether to vacate an attachment. <u>Aqua Stoli</u>, 460 F.3d at 446-47 & n.8.

[13] In <u>Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.</u>, 478 F. Supp. 2d 532 (S.D.N.Y. 2007), Judge Haight took a different approach and decided that it was appropriate to determine whether the claim was ripe under English law at the time the Rule B order issued.  <u>Id.</u> at 542.  The court held that the attachment at issue should be vacated because the defendant had the "stronger case" under English law based on the court's review of the parties' declarations.  <u>Id.</u> at 543.  As in <u>Sonito Shipping</u>, each party here provided the Court with copies of English cases it claims supports its position. Based on a review of those decisions, the Court believes that Bauche has the stronger argument.  However, the Court has not conducted an exhaustive review of English law on this subject and does not rely on the English decisions in deciding Bauche's motion.

contingent indemnity claim that would not be considered "maritime" under federal law. Accordingly, the Rule B Order must be vacated.

### 2. Whether Indagro's Claim Would Be Maritime In Nature

Even if Indagro had offered reasonable grounds to believe that it has a valid non-indemnity claim against Bauche under the Contract, the Court would still find that vacatur was warranted because Indagro has failed to show that such a claim could properly be viewed as arising from a severable, maritime provision in the Contract.

Accepting Indagro's characterization of its claim for the purpose of argument, there is no basis to find that the claim is severable or "maritime" in nature. Indagro's argument is that it is entitled to a payment from Bauche under the "demurrage" provision of the Contract regardless of whether Indagro has paid demurrage to the Vessel's owner. (Pltf. Br. at 21-22) The arbitrator may find that Bauche contracted to pay such a windfall. However, the fact that the windfall arises from a contractual provision labeled "demurrage" does not necessarily mean that Bauche's obligation is severable or "maritime." The mere presence of the term "demurrage" in a contract does not have a talismanic effect. As Judge Holwell recently noted, "'[d]emurrage' [is] not [a] magic word[] that relieve[s] a plaintiff of the burden of pleading a valid prima facie maritime claim." Tradhol Internacional, S.A. v. Colony Sugar Mills Ltd., No. 09-Civ.-00081(RJH), 2009 WL 2381296, at *5 (S.D.N.Y. Aug. 4, 2009).

Here, if Bauche was indeed obligated to make a payment to Indagro that was not a reimbursement for demurrage Indagro paid to the Vessel's owner, that payment would not meet the traditional definition of demurrage – i.e., "liquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by an

agreed time."[14]  Tradhol, 2009 WL 2381296, at *1 n.1 (emphasis added).  Although

Indagro cites several cases (Pltf. Br. at 17-20) in which courts have found that demurrage

provisions in sale contracts give rise to severable maritime obligations, in those cases,

unlike in this case, the demurrage provision was viewed as giving rise to an obligation on

the buyer's part to reimburse the seller/charterer for demurrage the seller/charterer paid to

the shipowner.  See Crossbow Cement SA v. Mohamed Ali Saleh Al-Hashedi & Bros.,

No. 08-Civ.-05074(HB), 2008 WL 5101180, at *6 (S.D.N.Y. Dec. 4, 2008) (plaintiff

characterized defendant's contractual obligation to pay demurrage as an indemnity

obligation and offered evidence that it had paid demurrage to shipowner); Centramet

Trading S.A. v. Egyptian Steel Rolling Co., No. 07-Civ.-6379(RMB), 2007 WL 5731922,

at *1 (S.D.N.Y. Sep. 28, 2007) (finding that Rule B requirements were met because

"[t]he contract specifically obliges Defendant to compensate Plaintiff for demurrage

owed to the vessel" (emphasis added)).[15]

---

[14] Here, there is no evidence that a demand for demurrage has been made on Indagro and it is not even clear that demurrage would be owed to the shipowner.  Bauche has made a detailed submission alleging that the delay during discharge was caused by defective cranes on board the Vessel.  See Reilly Decl. Ex. 3 ¶ 13.

[15] Indagro also cites Judge Lynch's oral decision in Noble Resources SA v. Sarl Ouest Import, No. 08-Civ.-3587, where, as here, the plaintiff argued that the demurrage provision was not an indemnity provision.  (De Klerk Aff. Ex. P at 11)  Judge Lynch did not explicitly address whether plaintiff was correct, because the procedural posture of the Noble Resources case was very different from that here.  The plaintiff in that case had obtained an attachment as security for an interim arbitration award in which the arbitrator had already found that the defendant owed the plaintiff "demurrage," based on the defendant's admission that demurrage costs had been incurred.  (Id. at 13:9-13, 15:23-16:4)  The only dispute relating to demurrage at the arbitration was whether the amount had been calculated properly.  (Id. at 13:16-20)  Judge Lynch concluded that the "calculation of demurrage" was a maritime question, because the defendant had effectively agreed to "pay for particular shipping costs."  (Id. at 20:8-19 (emphasis added))  There is no suggestion in Judge Lynch's opinion that he would have reached the

Indago has not cited any cases in which a court explicitly held that a buyer's obligation to pay "demurrage" to a seller, regardless of whether it was reimbursement, could be considered a severable maritime obligation. At least two courts in this District have reached a contrary conclusion. In <u>Aston Agro-Industrial AG v. Star Grain Ltd.</u>, No. 06-Civ.-02805(GBD), 2006 WL 3755156 (S.D.N.Y. Dec. 20, 2006), the court vacated a Rule B order that had been granted to obtain security for an arbitration award for "demurrage" after finding, <u>inter alia</u>, that the arbitration panel based its decision on its conclusion that the contract created an obligation of the buyer to pay "demurrage" "on the basis of the sales terms <u>independent of any demurrage payable under the charterparty</u>." <u>Id.</u> at **1-2 (emphasis added). And in <u>Tradhol</u>, the court explained that it had not issued a Rule B order based on the plaintiff's allegation that the defendant buyer "was to be responsible directly to [the plaintiff seller] for the payment of . . . demurrage" because there were no additional allegations to support the conclusion that such an obligation "was severable" from the other obligations in the sale contract. <u>Id.</u>, 2009 WL 2381296 at *5.

Therefore, even if Indago had offered sufficient evidence to show "reasonable grounds" for holding that it pled a valid, non-indemnity claim under English law, vacatur would still be warranted because Indago has not shown that such a claim would properly be considered maritime under federal law.

---

same decision if he had concluded that the defendant's obligation did not relate to actual "shipping costs" – <u>i.e.</u>, did not relate to demurrage actually incurred.

## **CONCLUSION**

Because Indagro has not shown that the requirements for a Rule B order or

the exercise of the Court's admiralty jurisdiction are met here, Bauche's motion to vacate

is GRANTED, the December 3, 2008 Rule B Order is hereby VACATED, and the

Verified Complaint is DISMISSED.  The Clerk of the Court is directed to close this case.

Dated: New York, New York          SO ORDERED.
      August 27, 2009

Paul G. Gardephe
United States District Judge

21