773-08/GMV/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Gina M. Venezia
Pamela L. Schultz

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INDAGRO S.A., | 08 Civ. 10388 (PGG) |
| Plaintiff, | |
| -against - | |
| BAUCHE S.A., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A STAY PENDING APPEAL

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Plaintiff

By:    Gina M. Venezia
Pamela L. Schultz
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005
Phone: (212) 425-1900
Fax: (212) 425-1901

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................. i

PRELIMINARY STATEMENT ...................................................................... 1

SUMMARY OF ARGUMENT IN SUPPORT OF STAY ............................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY ................................ 2

    A. Factual Background to Demurrage Claim.............................................2

    B. The Rule B Proceedings........................................................................2

ARGUMENT

POINT I

AN INTERIM STAY SHOULD BE GRANTED WHILE THE MOTION
IS CONSIDERED............................................................................................ 4

POINT II

A STAY IS WARRANTED IN THE CONTEXT OF THIS APPEAL........................... 4

    A.    Inadgro has an Immediate Right to Appeal and Should Not Be
          Left with an "Empty Rite."......................................................4

    B.    Inadgro Is Entitled to a Stay Pending Appeal.......................................5

          1.    Inadgro Has Shown a Substantial Possibility of Success on Appeal.......6

               (a)    This Court Misapplied English Law and Imposed Upon Inadgro
                     Too High of a Standard of Pleading a Valid *Prima Facie*
                     Maritime Claim............................................................... 6

               (b)    This Court Did Not Apply the *Kirby* amd *Folksamerica* Analysis
                     to the Claim and Therefore, Erred in Finding the Claim was
                     Not Maritime................................................................... 8

          2.    Irreparable Harm to Inadgro................................................. 13

          3.    No Injury to Bauche Will Result.......................................... 15

4.    Public Interest...................................................................... 15

CONCLUSION.............................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 655
(2d Cir. 1979)..................................................................................................... 15

*Aston Agro-Industrial AG v. Star Grain Ltd.*,
No. CIV.A.06-2805 (GBD), 2006 U.S.Dist. Lexis 91636 (S.D.N.Y. Dec. 20, 2006) ................ 12

*Atlantic Mutual Ins. Co. v. Balfour Maclaine International Ltd.*,
968 F.2d 196 (2d Cir. 1992)) ........................................................................................ 13

*Aurora Maritime Co. v. Abdullah Mohammed Fahem & Co.*,
85 F.3d 44 (2d Cir. 1996)............................................................................................. 16

*Brenntag Int'l Chems., Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999)....................................................................................... 14, 15

*C. Transp. Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*,
2008 U.S.Dist. Lexis 48688 (S.D.N.Y. June 19, 2008)...........................................................10

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*,
528 F. Supp. 2d 186, 189 (S.D.N.Y. 2007)................................................................ 6, 7, 15

*Centrament Trading v. Egyptian American Steel Rolling Co.*,
2007 U.S.Dist. Lexis 97940 (S.D.N.Y. Sept. 28, 2007), ......................................................... 11

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
543 F.3d 104 (2d Cir. 2008)......................................................................................... 16

*Crossbow Cement SA v. Mohamed Ali Saleh Al-Hashedi & Bros.*,
2008 U.S.Dist. Lexis 98319 (S.D.N.Y. Dec. 4, 2008)................................................................ 11

*Eli Lilly Do Brasil Ltda. v. Federal Express Corp.*,
502 F.3d 78 (2d Cir. 2007)............................................................................................. 7

*Fal Oil Co. Ltd. v. Petronas*
(2004) 2 Ll. L.R. 282 ................................................................................................... 8

*Ferrostaal, Inc. v. M/V SEA PHOENIX*,
4447 F.3d 212 (3d Cir. 2006)......................................................................................... 7

*Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*,
413 F.3d 307 (2d Cir. 2005)...................................................................................... *passim*

*Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.*,
962 F.2d 268 (2d Cir. 1992)............................................................................ 7

*Hayes v. City Univ. of New York*,
503 F. Supp. 946 (S.D.N.Y. 1980) ............................................................ 5,6

*Hirschfeld v. Bd. of Elections*,
984 F.2d 35 (2d Cir. 1993)............................................................................ 6

*Luckenbach S.S. Co. v. Berwind-White Coal Mining Co.*,
7 F.2d 793 (2d Cir. 1925)..................................................................…...................10

*Mediterranean Shipping Co. (USA) Inc. v. Rose*,
2008 U.S. Dist. Lexis 85615 (S.D.N.Y. Oct. 23, 2008)…...............................................10

*Noble Resources Sarl SA v. Sarl Ouest Import*,
No. 08-Civ.-3587 (S.D.N.Y aug. 12, 2008) (GEL)….......................................   .12, 13

*Noble Resources v. Yugtranzitservis & Silverstone*,
Civ. No. 08-3876 (S.D.N.Y. July 23, 2008) (LAP) ...................................................... 13

*Norfolk S. Ry. Co. v. Kirby*,
543 U.S. 14 (2004)....................................................................................... 10

*Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*,
06-5470-mv (2d Cir. April 29, 2007)….........................................................   4, 5

*Seide v. Crest Color Inc.*,
835 F.Supp. 732 (S.D.N.Y. 1993) ............................................................... 15

*Suzuki v. Companhia Mercantile International*
*(1921) 8 Ll.L.R. 174* ................................................................................. 8

*Swift & Co. Packers v. Compania Colombiana Del Caribe*, S.A.
339 U.S. 684 (1950))…...............................................................................1, 5

*Thapa v. Gonzales*,
460 F.3d 323 (2d. Cir. 2006)........................................................................ 5

*The Shipping Company of India Ltd. v. Jaldhi Overseas Pte. Ltd.*,
No. 08-cv-4328 (JSR), 2008 U.S. Dist. Lexis 49209 (S.D.N.Y. Jun. 27, 2008) .......................... 15

*Tradhol Internacional, S.A. v. Colony Sugar Mills Ltd.*,
2009 U.S.Dist. Lexis 67626 (S.D.N.Y. Aug. 4, 2009) (RJH)........................................ 12

iv

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
204 F.3d 384 (2d Cir. 2000) ......................................................................................... 10

*U.S. v. VISA U.S.A., Inc.*,
No. 98-CV-7076, 2007 U.S.Dist. LEXIS 58018 (S.D.N.Y. Aug. 7, 2007) (BSJ).......................... 5

*United States of America v. Fourteen Various Firearms*,
897 F.Supp. 271, 273 (E.D.Va. 1995) ......................................................................... 14

## Other Authorities

*28 U.S.C. §1291*............................................................................................................. 5

*Federal Rule of Civil Procedure 62*..................................................................... 1

*Moore's Federal Practice ¶710.02 (3d Ed. 2008)*.................................................. 5

*The Energizing Standards for Issuing Appellate Stays,* 45 Baylor L. Rev. 809 (1993)
Gotanda, John Y.................................................................................................14

## PRELIMINARY STATEMENT

Plaintiff Indagro S.A. ("Indagro") submits this memorandum in support of its motion pursuant to Federal Rule of Civil Procedure 62, seeking a stay, pending appeal, of the enforcement of the District Court's order entered on September 1, 2009, which vacated the Rule B attachment in the amount of $804,219.90.[1]

## SUMMARY OF THE ARGUMENT IN SUPPORT OF STAY

A Rule B attachment is a unique mechanism designed to provide a very specific and necessary remedy in the fluid arena of international maritime commerce. The device provides an aggrieved plaintiff engaged in international maritime commerce security for a claim against a peripatetic defendant. The remedy is effective in judgment enforcement, and an appeal absent a stay can amount to irreparable harm. But if a vacatur occurs, which is subject to a challenge on appeal, that appeal is rendered an empty rite absent a stay. *Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.*, 339 U.S. 684, 689 (1950).

In the circumstances of this case, the factors to be considered in deciding if a stay is appropriate weigh in favor of granting a stay. Specifically, there is a tremendous risk of irreparable injury absent the granting of a stay, especially in view of Bauche's current financial condition. Moreover, since Indagro agreed to post a supersedeas bond, no substantial harm will be visited on Bauche. Additionally, there is a substantial possibility that Indagro will succeed in its appeal, because, with all due respect, this Court's opinion is in contravention of the directives of controlling Supreme Court and Second Circuit authorities and creates an artificial boundary to the exercise of maritime jurisdiction which is precisely what the Supreme Court has countenanced against.

---

[1] A Notice of Appeal was filed on September 9, 2009 and is attached as Exhibit B to the Schultz Affidavit.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    Factual Background to Demurrage Claim.

In November 2007, Indagro and Bauche entered into a contract which provided for the sale and delivery of a cargo of fertilizer in bulk to West Africa. To fulfill its obligations under the contract, Indagro was to nominate a vessel for the carriage and did, in fact, charter the M/V SWIFT SPLASH from a third party for this purpose. The contract between Indagro and Bauche also contained detailed provisions regarding discharging of the cargo and the calculation of laytime and demurrage, and with respect to the rate of demurrage incorporated the rate "as per charter party of the performing vessel". As was customary, Indagro disclosed the demurrage rate to Bauche at the time of the vessel's nomination, and both the vessel and the rate were accepted by Bauche. The contract also called for the application of English law and arbitration pursuant to the London Maritime Arbitration Association ("LMAA").

The vessel arrived in Lome in mid-January, 2008, but discharge was not completed until mid-February, and therefore, close to $600,000 in demurrage accrued for Bauche's account under the demurrage provisions of the contract. Bauche refused to pay the amounts due, and LMAA arbitration was commenced.

### B.    The Rule B Proceedings.

In an effort to obtain security for its claims, Indagro filed a complaint in this Court on December 1, 2008, and applied for and was granted a Rule B maritime attachment.[2] Funds were

---

[2] There was another case filed by Indagro against Bauche in this Court in relation to demurrage owed under a contract with nearly identical terms as the contract herein. The other case involved the M/V VERILA and was pending before District Judge Batts. The VERILA case was filed first, and funds were initially attached in that case in November 2008. Bauche moved to vacate the attachment, asserting (as it later did here) that the demurrage claim was not maritime. Judge Batts rejected Bauche's argument and held in January 2008 that maritime jurisdiction existed

restrained pursuant to the attachment order, and Bauche was provided notice of these proceedings in early December 2008.   The full amount of security was restrained as of February 5, 2009.

All was quiet for the four and one half months after the initial restraint of funds, when Bauche moved by order to show cause for an order vacating the attachment.  Bauche argued that the claim for demurrage was one for indemnity under English law (even though neither the word "indemnity" nor "reimbursement" appears anywhere in the contract), and thus, the claim was not a maritime one sufficient to support a Rule B attachment.

This Court granted Bauche's motion by a Memorandum Order and Opinion which was entered on September 1, 2009.   In its opinion, this Court initially concluded that the contract at issue was not a maritime contract because its subject matter was the sale and purchase of fertilizer. The Court then concluded that the demurrage obligation under the contract was not a severable maritime obligation, for two distinct reasons.   First, this Court reasoned that it appeared the demurrage claim is one for indemnity under English law, and since there was no evidence Indagro (as seller) had actually paid demurrage to the vessel owner, the claim was unripe and consequently not a valid maritime claim for Rule B.  Secondly, the Court concluded, in the alternative, that if the claim was a non-indemnity claim, it still is not maritime because there was no evidence that the amount owed represents reimbursement to Indagro for actual demurrage paid to the vessel owner.

Even though the opinion indicates there were two separate reasons for vacating the attachment, the opinion actually boils down to a single premise – a claim for demurrage under a sales contract resulting from delays in the discharge of cargo from an ocean-going vessel is not

over the demurrage claim under the nearly identical contractual terms as involved in the captioned matter.

maritime unless the seller has actually paid demurrage to a third-party (*i.e.* the vessel owner). Indagro maintains that the opinion therefore draws an artificial boundary for the exercise of maritime jurisdiction and is therefore in error. Plaintiff filed its Notice of Appeal on September 9, 2009.

## ARGUMENT

### POINT I

### AN INTERIM STAY SHOULD BE GRANTED WHILE THE MOTION IS CONSIDERED.

As the Court is aware, the vacatur is automatically stayed for only a ten-day period, but after that, security will be lost. Therefore, Indagro seeks an interim stay while this motion for a stay is considered – the grounds for an interim stay being essentially the same grounds for a stay pending appeal, as discussed more fully below.[3]

### POINT II

### A STAY IS WARRANTED IN THE CONTEXT OF THIS APPEAL

**A.    Indagro Has an Immediate Right to Appeal and Should Not Be Left with an "Empty Rite."**

Since this Court ordered that the maritime attachment be vacated, this final order is appealable as of right. 28 U.S.C. §1291. The Second Circuit expressly recognized the right of appeal from an interlocutory <u>vacatur</u> order in *Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.,* 06-5470-mv (2d Cir. April 29, 2007) (citing *Swift & Co. Packers v. Compania Colombiana Del Caribe*, S.A. 339 U.S. 684, 688-89 (1950)).

---

[3] Indagro further requests that if this Court ultimately denies the application for a stay, this Court permit the temporary stay to remain in effect for an additional ten (10) days so as to provide Plaintiff with an opportunity to seek relief from the Second Circuit Court of Appeals.

In the context of a maritime attachment, Justice Frankfurter noted many years ago: "appellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." *Swift*, 339 U.S. at 689. The concern of whether a claimant would be left with nothing other than an empty rite is especially valid when an order to vacate the attachment of highly-mobile property affects both jurisdiction and security on appeal. *See* 29 James Wm. Moore, et al, MOORE'S FEDERAL PRACTICE ¶ 710.02 (3d ed. 2008). This "empty rite" is what Indagro fears and accordingly for that reason, respectfully moves, for an order staying the vacatur order pending the outcome of the appeal.

**B.    Indagro Is Entitled to a Stay Pending Appeal.**

The Second Circuit has articulated a four-part test to determine whether a stay should be granted pending appeal: (i) a substantial possibility, although less than a likelihood, of success on appeal; (ii) there is risk of irreparable injury absent a stay; (iii) no substantial harm will be visited on the non-movant; and, (iv) the public interests that may be affected. *See, generally, Thapa v. Gonzales*, 460 F.3d 323, 334 (2d. Cir. 2006); *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993).

"The Court treats these factors 'somewhat like a sliding scale.'" *U.S. v. VISA U.S.A., Inc.*, No. 98-CV-7076 (BSJ), 2007 U.S.Dist. LEXIS 58018 (S.D.N.Y. Aug. 7, 2007) (quoting *Thapa*, 460 F.3d at 334). Thus, "'the necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors.'" *Id.* (quoting *Thapa*, 460 F.3d at 334); *see also Hayes v. City Univ. of New York*, 503 F. Supp. 946, 962 (S.D.N.Y. 1980) ("Issuance of a stay pending appeal is discretionary and equitable. . ."); *see also Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 189 (S.D.N.Y. 2007) (citation

omitted). Application of these factors to the facts and circumstances of this case militates toward issuance of a stay for the reasons set forth below.

### 1.    Indagro Has Shown a Substantial Possibility of Success on Appeal

Indagro respectfully submits there is a substantial possibility that the Second Circuit will find not only that the exercise of maritime jurisdiction over Indagro's claims for demurrage is appropriate, but also that Indagro sustained its burden to maintain the attachment under Rule B. First, this Court imposed too high of a standard of proof upon Indagro at the vacatur stage and misapplied English law in determining that the claim here appears to be one for non-indemnity and is thus not a valid maritime claim. Secondly, in evaluating whether the claim was nevertheless a severable non-indemnity maritime claim, this Court applied too narrow of a view of maritime contract jurisdiction in light of recent pronouncements of the Supreme Court and Second Circuit which clarify the expansive boundaries of admiralty jurisdiction. Each is briefly discussed below.

### (a)    *This Court Misapplied English Law and Imposed Upon Indagro Too High of a Standard of Pleading a Valid Prima Facie Maritime Claim*

In considering whether Indagro had pled a valid *prima facie* maritime claim, this Court considered whether, under English law (the law applicable to the contract), Indagro's demurrage claim was one for indemnification or rather, was an independent obligation owed by Bauche. The parties submitted their positions on English law on this point. With its submissions, Bauche included cases discussing English law and some treatises discussing the same. Likewise, Indagro provided to the Court the submissions it had made in the arbitration (and which addressed English law) where it had always taken the position that the demurrage claim was an independent obligation which arose irrespective of its obligation to the shipowner.

Although this Court stated it did "not rely on the English decisions in deciding Bauche's motion" (Op. at p. 17, n. 13), it also stated it "believes that Bauche has the stronger argument" under English law.    With its ruling, the Court effectively applied English law to the issue of whether Indagro's claim was one for indemnity or instead an independent obligation and interpreted the contract before it.

As this Court is aware, the Second Circuit will consider this Court's determination of foreign law as a legal determination which is reviewed *de novo. Eli Lilly Do Brasil Ltda. v. Federal Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007); *Ferrostaal, Inc. v. M/V SEA PHOENIX*, 4447 F.3d 212, 216 (3d Cir. 2006).    Likewise, interpretation of a contract is a question of law, also subject to *de novo* review.    *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 273 (2d Cir. N.Y. 1992).    When the entire record is reviewed (including the authorities submitted by Defendant Bauche), it is clear that there is a sufficient reasonable showing that the demurrage obligation under the contract is not one based on indemnity.

The most relevant evidence is already in the record.    First, the contract lacked any reference to the terms "indemnity" or "reimbursement."    Moreover, both parties' submissions contained English legal authorities and treatises discussing selected English law cases, which confirmed the validity of Indagro's claim as a non-indemnity claim under English law. Importantly, Bauche's own initial submissions acknowledged that recent English jurisprudence (*i.e. Fal Oil Co. Ltd. v. Petronas, infra*) supports the proposition that similar contracts have been interpreted to give the seller an independent right to claim demurrage.    (ECF Doc. 16, p. 22, n. 14).[4]    In its reply, Bauche again cited English materials which recognized that a provision in the

---

[4] The issue with respect to the interpretation of English law below had essentially focused on two cases: *Suzuki v. Companhia Mercantile Internacional* (1921) 8 Ll.L.R. 174 (for Bauche's position) and *Fal Oil Co. Ltd. v. Petronas*, (2004) 2 Ll.L.R. 282 (for Indagro's position).

contract of sale for payment of demurrage "as per charter-party" (the clause at issue here) may give rise to "an independent and free standing right." (ECF Doc. 19, Exh. 14). The apparent validity under English law of the demurrage obligation owed by Bauche as one for indemnity was confirmed by Indagro's submission of the Declaration from an English Solicitor. (ECF Doc. 12, ¶ 7).

Nevertheless, this Court noted "the conflicting and conclusory expert testimony" and on this basis, found that Indagro had not shown a "fair probability" that it had a non-indemnity claim against Bauche.[5] Yet, as noted this Court reached the conclusory assertion that Bauche had the "stronger argument". Since the most relevant evidence demonstrates that Indagro has a valid maritime claim which does not sound in indemnity, Indagro submits that this Court's apparent interpretation of the demurrage obligation to be one for indemnity was erroneous.

> ### (b)    *This Court Did Not Apply the Kirby and Folksamerica Analysis to the Claim and Therefore, Erred in Finding the Claim Was Not Maritime.*

The old and now outdated rule is that maritime jurisdiction was reserved to contracts, claims and services which were purely maritime but, over the years, this test has been loosened considerably. *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 314 (2d Cir. 2005). The abiding instruction of the Supreme Court is that the courts should look to the contract's nature and character to see whether it has references to maritime service or maritime transactions. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004). *Kirby* commands

---

However, as noted by Indagro in its opposition memorandum, in *Fal Oil* Lord Justice Mance criticized the outdated 1921 *Suzuki* case as lacking any reasoning as to why an independent scheme regarding demurrage cannot be created a buyer and a seller.

[5] Although this Court stated it did "not rely on the English decisions in deciding Bauche's motion." (Op. at p. 17, n. 13), it had previously stated "the Court believes that Bauche has the stronger argument." Since Indagro is only required to show "reasonable grounds" for the attachment, such a finding imposed upon Indagro a higher standard than the law dictates.

that courts should not erect strict limitations to an exercise of maritime jurisdiction, but should instead ask whether maritime commerce is implicated. *Id.* at 24. The question is whether there is a "reference to maritime service or maritime transactions." *Id.* at 24; *see also Folksamerica*, 2005 A.M.C. at 1751.

In *Folksamerica*, the Second Circuit recognized the expansive view towards maritime jurisdiction espoused in *Kirby*, when it confirmed that contracts with both maritime and non-maritime elements ("mixed" contracts) can still give rise to maritime jurisdiction. The Court explained that maritime jurisdiction exists when: (1) "the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract;" or (2) "the non-maritime elements of a contract are merely incidental to the maritime ones." *Folksamerica*, 413 F.3d at 314. The Court reiterated, in line with *Kirby*'s dictate, that the "focal point" in the analysis must be on whether maritime services and transactions are involved. *Id.* at 312.

Although neither *Kirby* nor *Folksamerica* involved situations of severable maritime obligations (as the subject case), their pronouncements on the more expansive view of maritime jurisdiction nevertheless influence all cases involving questions of maritime contract jurisdiction. Accordingly, courts should not erect artificial boundaries to maritime jurisdiction in determining whether a particular claim is a several maritime claim. Rather, in line with the controlling directive that courts should look to whether a contract references maritime services or transactions, courts should examine whether the particular component of a contract at issue references severable maritime services or transactions, to determining whether maritime jurisdiction exists over a claim arising out of that component.

In the instant case, Plaintiff Indagro submits that, in contravention of Supreme Court and Second Circuit authority on the boundaries of maritime jurisdiction, this Court created a precise

exacting boundary by drawing an artificial distinction for claims involving demurrage under sales contracts requiring transportation by sea. Under the Court's opinion, the question of whether a demurrage claim is maritime for delays occurring during the discharge of cargo from a vessel, owed under and calculated by the terms of a sales contract, will depend solely on whether the plaintiff has paid someone not involved in the dispute. The opinion therefore erects an artificial boundary for the exercise of maritime jurisdiction by which the same exact demurrage claim arising out of delays in the discharge of cargo will or will not be maritime depending solely on whether there has in fact been payment under a charter party. The distinction is unsupportable, because in either situation (*i.e.* whether the plaintiff has paid or has not), the nature of the claim is exactly the same – it represents amounts owed as a result of delays occasioned during the discharge of an ocean-going vessel – a classic maritime obligation which is the *sine qua non* of maritime commerce.[6]

As noted, when considering whether a claim arising out of an obligation in a mixed contract is maritime, the dictates of *Kirby* must influence a court's analysis. *Folksamerica,* 413 F.3d at 314. Thus, to determine whether a particular claim is maritime, a court must consider whether that claim implicates the fundamental interest of maritime jurisdiction – the protection

---

[6] Demurrage clauses are "maritime" in nature inasmuch as they "remunerat[e] the shipowner for the detention of its vessel beyond the number of days allowed by the charter-party" and, accordingly, have the requisite connection to maritime commerce. *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 386, n. 2 (2d Cir. 2000); *see also Mediterranean Shipping Co. (USA) Inc. v. Rose*, 2008 U.S. Dist. Lexis 85615, at *3 (S.D.N.Y. Oct. 23, 2008) (noting that "[a]dmiralty jurisdiction has …been found over actions for the recovery of demurrage ·or detention charges pursuant to a contract for the carriage of goods by water"); *Luckenbach S.S. Co. v. Berwind-White Coal Mining Co.*, 7 F.2d 793, 795 (2d Cir. 1925) (holding that court has admiralty jurisdiction over claim for demurrage pursuant to charter party); *C. Transp. Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, 2008 U.S.Dist. Lexis 48688, at *8 (S.D.N.Y. June 19, 2008) (finding that a settlement agreement obligating one party to pay demurrage on an uncompleted charter gave rise to admiralty claim even though settlement agreements typically are not maritime in nature).

of maritime commerce. Moreover, reference of the claim to maritime services and transactions also requires examination. This Court did not undertake this examination, and once a proper examination is undertaken, the maritime nature of the demurrage claim is apparent. The claim relates solely to the ocean carriage of cargo onboard a vessel and the discharge of the cargo and attendant delays during the discharge from that vessel. Not only does the demurrage claim reference maritime services and transactions, the demurrage claim directly implicates maritime commerce.

Although this Court recognized the extension of maritime jurisdiction to demurrage obligations in similar contracts under *Crossbow Cement SA v. Mohamed Ali Saleh Al-Hashedi & Bros.*, 2008 U.S.Dist. Lexis 98319 (S.D.N.Y. Dec. 4, 2008) and *Centrament Trading v. Egyptian American Steel Rolling Co.*, 2007 U.S.Dist. Lexis 97940 (S.D.N.Y. Sept. 28, 2007), Indagro respectfully submits that it mis-characterized those cases as ones which implicated maritime jurisdiction only because the demurrage obligation was viewed as an obligation to reimburse the charterer for amounts it paid the vessel owner. However, neither case specifically addressed or considered whether its holding would be different in a case where the demurrage obligation was a direct obligation not dependent on the seller's payment to the vessel owner. Indagro submits that if the facts of *Centrament* and *Crossbow* were as they are in this case and the appropriate *Kirby/Folksamerica* analysis undertaken, maritime jurisdiction still would have been exercised in those cases.[7]

---

[7] After effectively reclassifying the demurrage obligation Bauche owed to Indagro as only one of reimbursement and/or indemnity, this Court went on to note that *Aston Agro-Industrial AG v. Star Grain Ltd.*, No. CIV.A.06-2805 (GBD), 2006 U.S.Dist. Lexis 91636 (SDNY Dec. 20, 2006) and *Tradhol Internacional, S.A. v. Colony Sugar Mills Ltd.*, 2009 U.S.Dist. Lexis 67626 (SDNY Aug. 4, 2009), held that a buyer's obligation to pay demurrage to a seller does not constitute a severable maritime obligation. However, neither case stands for that proposition. *Aston* involved a district court's vacatur of an attachment because the claims under the arbitration

Such an analysis was undertaken in *Noble Resources Sarl SA v. Sarl Ouest Import*, No. 08-Civ.-3587 (GEL) (the "*Sarl*" case), which upheld an exercise of maritime jurisdiction in a claim similar to the one at issue here. In its opinion, this Court distinguished *Sarl* on the basis that the *Sarl* Court had not "explicitly address[ed]" whether the demurrage provision was an indemnity provision. The basis for this distinction may have incorrectly stemmed from a parsed reading of the transcript of that case. *Sarl* involved an identical dispute (*i.e.* payment of demurrage), and at oral argument, the defendant argued extensively that the plaintiff's claim was one for indemnity, and therefore, not maritime. Judge Lynch specifically acknowledged and was well aware of the defendant's indemnity argument, but nevertheless found the existence of maritime jurisdiction. Judge Lynch did not base his decision on whether or not there was payment to the vessel owner. Instead, Judge Lynch commented that "This case concerns [demurrage] obligations that are common and instrumental features of maritime contracts and not terms that are typical features of contracts for the sale of goods generally." (ECF Doc. 13, Ex. P, pp. 22-23). In so doing, the Court addressed the severability prong of the mixed contract analysis, and inquired "whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction." (ECF Doc. 13, Ex. P, pp. 19-20, citing, *Atlantic Mutual Ins. Co. v. Balfour Maclaine International Ltd.*, 968 F.2d 196, 200 (2d Cir. 1992)). Since the answer to that

---

award for which the plaintiff sought security were not claims for breach of any maritime obligation, but rather claims which stemmed from a standard contract term assigning the risk of loss of goods during transit. Likewise, *Tradhol* involved a district court's refusal to order the issuance of a maritime attachment because the complaint did not contain enough allegations to permit the court to conclude the demurrage and deadfreight claims were severable. Unlike in this case, where the terms of contract set forth detailed provisions regarding discharge of the cargo and calculation of laytime and demurrage, the *Tradhol* Court had not even been presented with a copy of the contract, and thus, the Court could not conclude that any of the obligations were severable from other portions of the contract.

inquiry was yes and the dispute centered on a demurrage claim resulting from delays in discharge at port, the obligations fell squarely within the court's admiralty jurisdiction. Indagro submits that the *Sarl* Court employed the proper analysis in making its determination of admiralty jurisdiction, and that application of that analysis below would have led to the inevitable conclusion that the claim here is maritime in nature.

Within this Court, another judge, Judge Preska, abided by the language of *Kirby* and *Folksamerica* when considering whether disputes arising under sales contract similar to the one at issue here were properly subject to maritime jurisdiction. *Noble Resources v. Yugtranzitservis & Silverstone*, Civ. No. 08-3876 (SDNY July 23, 2008). In *Yugtranzitservis,* Judge Preska found that the "contract itself made clear that maritime transportation was integral to the agreement" and that the dispute between the parties touches upon maritime commerce." Thus, the exercise of admiralty jurisdiction was appropriate.

Plaintiff respectfully submits that in view of the controlling authority dictating the analysis to be employed in deciding maritime jurisdiction questions, this Court erroneously focused on artificial distinctions which the Supreme Court and Second Circuit countenance against.

**2.      Irreparable Harm to Indagro.**

With respect to the second element, there is clearly a "risk" that absent the stay in the circumstances of this case, Indagro could suffer irreparable harm. The nature of this action is security, the absence of which could potentially result in an inability to enforce any eventual award. Bauche has no known assets in this forum, and therefore, Indagro's rights will be gone once the security is gone. Moreover, Indagro is not the only entity to whom Bauche has refused to pay demurrage due as a result of discharge delays. A recent article in *TradeWinds*, a maritime

publication circulated worldwide, confirms that Bauche has refused to pay over a million dollars in demurrage it owed to Mekatrade Asia Pte. Ltd. as a result of demurrage delays at the port of Abidjan where the discharge of two vessels was delayed over forty days.    (Schultz Affidavit, ¶ 2).

Analysis of irreparable harm is ordinarily a three-step process whereby the injury or harm must be irreparable, the injury or harm must be likely to occur, and there must be some connection between the injury and the action sought to be enjoined. John Y. Gotanda, *The Emerging Standards for Issuing Appellate Stays*, 45 Baylor L. Rev. 809, 814-15 (1993). However, in the context of a stay application, slightly different criteria should be utilized in viewing the appropriate measure of irreparable harm.  *See, e.g. United States of America v. Fourteen Various Firearms,* 897 F.Supp. 271, 273 (E.D.Va. 1995) (while ordinary monetary injury may not constitute irreparable harm, courts have recognized that where the "failure to enter a stay will result in a meaningless victory.... the court should enter a stay.")   In commenting on this issue, in the context of a stay application, the Second Circuit has indicated

> a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action, the parties cannot be returned to the positions they previously occupied.

*Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999).  Further, and as the court noted in *Seide v. Crest Color Inc.*, 835 F.Supp. 732, 735 (S.D.N.Y. 1993), even in the context of an application for an injunction, the criteria can be satisfied where such relief is needed to prevent a defendant from making a judgment uncollectible.[8]

---

[8]    The ultimate outcome in *Centauri Shipping*, 528 F.Supp.2d 186 (S.D.N.Y. 2007), is also instructive. Here, a Rule B attachment was vacated and a stay denied at the district court level under the four-part test, the court applying the more traditional irreparable harm standard.   Plaintiff argued that defendant's financial condition caused concern but the evidence revealed a pre-tax profit of $20.4 million. On appeal,

**3.    No Injury to Bauche Will Result.**

As set forth in the Schultz Affidavit, Plaintiff Indagro will post a supersedeas a bond which will prevent injury to Defendant during the pendency of the appeal to the Second Circuit. (Schultz Aff. ¶ 4).    Moreover, Bauche's counsel has known about the attachment since December 3, 2008 and waited nearly five months before it filed its motion to vacate.  As such, any argument by Bauche that the continued restraint of its funds will cause injury lacks any basis.

**4.    Public Interest.**

This Court needs no citation to the principle that the enforcement of legitimate money judgments serves the public purpose because it facilitates commerce.  The entire public policy reasoning behind Rule B maritime attachments is to provide a basis for recovery in a fluid international market.  This pre-judgment remedy is designed to benefit creditors who engage in international maritime trade and who face the special risks that arena presents against "perpetrators of maritime injury [who] are likely to be peripatetic." *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 655 (2d Cir. 1979).  Without rigid enforcement of such security devices as Rule B attachments, a defendant's "funds [could] easily . . . evade the enforcement of substantive rights of admiralty law". *Aurora Maritime Co. v. Abdullah Mohammed Fahem & Co.*, 85 F.3d 44, 47 (2d Cir. 1996).

A stay in this case will therefore clearly serve the public interest and will avoid Indagro's breach of contract claim from being reduced to the "empty rite" which the Supreme Court

---

the Second Circuit granted the stay, on the very same factual record.  This demonstrates that the requisite degree of irreparable harm is not the same as needed for a non-stay injunction application.  Indeed, every Rule B appeal involves a claim for monetary damages, and if this were in fact the rule, virtually no stay would ever issue. *See also The Shipping Company of India Ltd. v. Jaldhi Overseas Pte. Ltd.*, No. 08-cv-4328 (JSR), 2008 U.S. Dist. Lexis 49209 (S.D.N.Y. Jun. 27, 2008)) (stay granted without any discussion of imminent financial collapse and extended on appeal.)

discussed in *Swift*. Indeed, as late as the Second Circuit's decision in *Consub* just last year, the Court noted the importance of the maintenance of security and the ramification it has on the enhancement of maritime commerce. *Consub Delaware LLC v. Schahin Engenharia Limitada*, 543 F.3d 104 (2d Cir. 2008).

## CONCLUSION

For the reasons set forth above, a stay should be entered during the ensuing appeal to the Second Circuit Court of Appeals.

Dated: New York, New York
September 9, 2009

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Plaintiff

By: _____
Gina M. Venezia
Pamela L. Schultz
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005
Phone: (212) 425-1900
Fax: (212) 425-1901