UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
INDAGRO, S.A.,

                Plaintiff,                Case No.:  08 Civ 10388 (PGG)

   - against -

BAUCHE, S.A.,

                Defendant.
-------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR STAY PENDING APPEAL

HILL, BETTS & NASH LLP
Attorneys for Defendant
James D. Kleiner (JK-6033)
Mary T. Reilly (MR-6305)
One World Financial Center
200 Liberty Street
26th Floor
New York, New York 10281
(212) 839-7000

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... ii

FACTS ........................................................................................................................................ 2

    1.    The Demurrage Claim Arises Under a Sales Contract ......................................... 2

    2.    No Evidence of Any "Maritime" Demurrage Claim ............................................ 3

ARGUMENT ............................................................................................................................. 3

**POINT I**
**IMMEDIATE RELEASE PURSUANT TO ADMIRALTY RULE E(5)(c)** ................................. 3

**POINT II.**
**A STAY IS NOT WARRANTED** ........................................................................................... 5

    1.    Irreparable Harm .................................................................................................... 6

    2.    Harm to Bauche ..................................................................................................... 8

    3.    Indagro Cannot Show a "Substantial Possibility" of Success on Appeal ............... 9

        (a)    Low Prospect of Reversal on the Indemnity Issue – The Court
             Applied the Correct Standards, Burden and Law ...................................... 9

        (b)    Low Prospect of Success on the "Maritime" Contract Issue – The
             Court Correctly Applied the Law ............................................................ 11

    4.    Public Policy ....................................................................................................... 13

    5.    Balancing the Factors .......................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alyeska Pipeline Service v. Vessel Bay Ridge*, 703 F.2d 381, 385 (9th Cir. 1983) ........................ 3

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 439 (2d Cir. 2006) .......... 4, 10

*Aston Agro-Industrial AG v. Star Grain Ltd.*, No. 06-Civ.-02805 (GBD), 2006 WL 3755156, at *3 (S.D.N.Y. Dec. 20, 2006) ........................................................................ 12

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F.Supp.2d 186,188-189 (S.D.N.Y. 2007 ........................................................................................................ 5, 7, 8

*Efko Food Ingredients Ltd. v. Pacific Inter-link SDN BHD*, 582 F.Supp.2d 466, 470 (S.D.N.Y. 2008) ............................................................................................................ 12

*Fal Oil Co. Ltd. v. Petronas (the Devon)*, [2004] Lloyd's Rep. 282, 293 and 299, 2nd Col. ........ 11

*Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 312 (2d Cir. 2005) ........................................................................................................... 12

*Hawknet Ltd. v. Overseas Shipping Agencies, et al*, 2009 WL 1309 854 (May 6, 2009, S.D.N.Y) .................................................................................................................... 8

*In Re Adelphia Communications Corp. Debtors v. Adelphia Corp.*, 361 B.R. 337, 349 (S.D.N.Y. 2007 ........................................................................................................... 5, 6

*Indagro, S.A. v. Bauche, S.A.*, 08 Civ. 10174 (DAB) ........................................................... 1

*Lucky-Goldstar, Int'l (America) Inc. v. Phibro Energy Int'l, Ltd.*, 958 F.2d 58, 59 (5th Cir. 1992). ........................................................................................................................ 12

*Mason Agency Ltd. v. Eastwind Hellas S.A.*, Slip. Opinion, 2009 WL 3109821 (September 29, 2009, S.D.N.Y.) ................................................................................ 8

*McDermott Gulf Operating Company v. Con-Drive, LLC*, 2009 WL 1855929 (June 29, 2009 S.D.Ala. ............................................................................................. 6, 8

*MS TAGA BAY GmbH & Co. Containerschiff KG v. SA Independent Liner Service Pty Ltd.*, 2009 WL 513023 (S.D.N.Y.) ............................................................................ 8

*Norfolk S. Ry. Co. v. James Kirby, Pty Ltd.*, 543 U.S. 14, 24, 125 S.Ct. 385, 393 (2004) ........... 12

*Shanghai Sinom Import & Export v. Exfin (India) Mineral Ore Co.*, 2006 AMC 2950, 2951 (S.D.N.Y. Oct. 5, 2006) ........................................................................................... 12

*Sonito Shipping Co. Ltd v. Sun United Maritime Ltd.*, 478 F.Supp.2d 532, 543
(S.D.N.Y. 2007) (Haight J.) .......................................................................... 10, 11

*Suzuki v. Companhia Mercantile Internacional* (1921) 9 L1.LR. 171 ........................................ 10

*Swift & Co. Packets et al. v. Compania Columbiana del Caribe, S.A.*, 339 U.S. 684,
70 S.Ct. 861 (1950) .......................................................................................... 6

*T & O Shipping Ltd. Lydia Mar Shipping Co. S.A.*, 415 F.Supp.2d 310, 316 (S.D.N.Y.
2006) ............................................................................................................ 11

*Thapa v. Gonzales*, 460 F.3d 323, 336 (2d Cir. 2006) ................................................... 5

*The Lake Galera*, 60 F.2d 876 (2nd Cir. 1932) .......................................................... 13

*The Shipping Company of India Ltd. v. Jaldhi Overseas Pte. Ltd.*, 2008 U.S. Dist.
Lexis 49209 (S.D.N.Y. June 27, 2008) ............................................................. 8

*Tradhol Internacional, S.A. v. Colony Sugar Mills Ltd.*, No. 09-Civ.-0081 (RJH),
2009 WL 2381296, at *1 ................................................................................ 12

*Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport N.V.*,
572 F.3d 96 (2d Cir. 2009) ............................................................................. 4

*Ullises Shipping Corp. v. FAL Shipping Co. Ltd*, 415 F.Supp.2d 318, 325 (S.D.N.Y. 2006) ...... 10

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 267 (2d Cir. 2002) ............................ 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
INDAGRO, S.A.,

                        Plaintiff,                      Case No.: 08 Civ 10388 (PGG)

      - against -

BAUCHE, S.A.,

                        Defendant.
------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR STAY PENDING APPEAL

Defendant, Bauche, S.A. ("Bauche"), with the accompanying declaration of its Chief Executive Officer, Nicolas C.H. Bauche, respectfully submits this Memorandum in opposition to the motion, by Order to Show Cause, of plaintiff, Indagro S.A. ("Indagro"), for a stay precluding the release of $804,219.90, pending appeal against the Court's September 1, 2009 Memorandum Opinion and Order ("Mem. Order") vacating the attachment and dismissing the action.[1]

The Court's decision to vacate is based upon two grounds. First, plaintiff has failed to carry its burden to show that it had an accrued cause of action for demurrage under its sales contract – as opposed to an unmatured claim for indemnity. Second, the claim is not "maritime" because it arises under an ordinary contract for the sale of goods to be shipped and hence does not provide the requisite jurisdictional basis for the action.

---

[1] A further $1,512,372.15 remains under attachment pursuant to a writ that Indagro obtained in the related case, *Indagro, S.A. v. Bauche, S.A.*, 08 Civ. 10174 (DAB).

# FACTS[2]

## 1. The Demurrage Claim Arises Under a Sales Contract

As its Complaint recites, the demurrage claim arises under an English law "contract ... [whereby] plaintiff Indagro agreed to *sell* and defendant Bauche agreed to *purchase*" a shipment of NPK 8-24-24-9 fertilizer, on a "cost and freight" basis (Emphasis added.) Verif. Complaint ¶ 4, 6 (the "Sales Contract"). Under the Sales Contract – as typical for such CFR sales agreements – title and risk are transferred to the buyer when the goods are loaded onto the ship. *Id.* Clearly, this means that the seller, in this case Indagro, is entitled to *reimbursement* from the buyer for any post-loading expense – including the instant claim for demurrage – but only if and to the extent incurred by Indagro.

Indagro could have gone a step further and bargained for special wording providing that Indagro would be independently entitled to recover demurrage from Bauche, regardless of whether Indagro incurred it as an expense under its charter party with the shipowner. It did not do so. To the contrary, the Sales Contract specifically adopted well-known, classic demurrage wording that has long been accepted as an indemnity. In particular, the Sales Contract provides:

> **DEMURRAGE/**     As per Charter Party of the performing vessel to be
> **DESPATCH**       advised upon nomination.

So to the extent that the facts are any guide, the nature of this CFR contract and the parties' own choice of wording, declare the instant demurrage claim to be an action for indemnity.[3]

---

[2] The facts are recited in detail in Bauche's Memorandum (Bauche Memo.) and Reply Memorandum (Bauche Reply) filed in support of its motion to vacate. Docket #16 and #18. Bauche further relies on its exhibits, including cases and treatises of English law. Reilly Decl. (Exhs. 1-10) and Kleiner Decl. (Exhs. 11-15). Docket #17 and #19. References will be to the parties' papers submitted in that motion.

[3] See, Bauche's Defence Submissions, in the London Arbitration, prepared by Defendant's counsel, an eminent "Queens Counsel" Barrister, Stephen Kenny, QC. Reilly Decl., Exh. 3, 6, and 7.

2.  **No Evidence of Any "Maritime" Demurrage Claim**

As alleged in the Verified Complaint, Indagro entered a charter party with a ship owner, for the vessel M/V SWIFT SPLASH to carry the fertilizer to the destination. There were substantial delays in discharge. However, such delays were due to the ship's cranes, which were not working. The M/V SWIFT SPLASH was not a fit and suitable vessel. No demurrage expense was therefore incurred. Defence Submission, Reilly Decl., Exh. 3, ¶¶ 4-15, 13, Docket #17. Nevertheless, plaintiff invoiced Bauche for demurrage in the sum of $581,875.00.

As observed by the Court in its Opinion, "in this case there is no evidence (or even an allegation) that Indagro paid demurrage to the Vessel's Owner, or that such a payment has ever been demanded." *Id.*, at 7. Clearly there was no such demurrage, owed to the shipowner under the maritime charter party contract. Knowing this, Indagro has tried to earn itself a windfall by alleging that its entitlement had "nothing to do with" the charter party, but rather arose as an independent right under its Sales Contract. Bauche Memo, p. 6, Docket #16, Verified Complaint ¶¶ 16-23.

## ARGUMENT

### POINT I

### IMMEDIATE RELEASE PURSUANT TO ADMIRALTY RULE E(5)(c)

Given the primacy of the Supplemental Admiralty Rules over the General Rules of Civil Procedure, it is clear that Admiralty Rule E(4)(f) (Defendants' right to an immediate determination of whether the attachment "should be vacated") and Rule E(5)(c) (vacatur order entered "as of course by the Clerk."), govern the release of the attached *res* in admiralty actions. *Alyeska Pipeline Service v. Vessel Bay Ridge*, 703 F.2d 381, 385 (9th Cir. 1983). (Holding that the court lost jurisdiction when property attached under Rule C was released). The defendants'

Rule E(4)(f) right to an immediate determination would be an "empty right" if wrongfully attached property continued to be retained by the court until after the appeal on the merits. In the instant case, the appeal of the vacatur issue will not even be heard until well after the final decision on the merits in the London arbitration. Thus, regardless of the merits of such appeal, Bauche's funds would languish under wrongful attachment and its right to immediate release would be rendered illusory. Rule E(5)(c) expressly provides in relevant part that the release of attached or arrested property may be effected "forthwith" upon the posting of a bond with the Marshal, but otherwise must be by order of the Court; but such order may be entered *as of course by the clerk* ... upon the dismissal or continuance of the action ...." (emphasis added) While it is correct that some courts have granted or recognized stays, upon analysis, it can be seen that the continued restraint of wrongfully attached funds violates both letter and spirit of the governing Admiralty Rule. The issue has a broader due process dimension, given that the protections, of notice and an immediate determination are necessary constituents, without which admiralty attachment would not pass constitutional muster.[4] It is always open to the plaintiff to apply for a stay. *Alyeska*, supra. However, the Court ought not to grant one except in compelling circumstances not shown here. Bauche's wrongly attached property ought to be released forthwith and the stay denied.

---

[4] In 1985, the Supplemental Rules were amended to address concerns that the prior procedure for obtaining maritime attachments was not consistent with constitutional principles of due process. Rule E(4)(f) was enacted to guarantee a prompt post-seizure hearing at which the defendant can contest the validity of the attachment. *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport N.V.*, 572 F.3d 96 (2d Cir. 2009) citing *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 267 (2d Cir. 2002) and *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 439 (2d Cir. 2006).

## POINT II.

## A STAY IS NOT WARRANTED

In citing Judge Sullivan's ruling, in *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F.Supp.2d 186,188-189 (S.D.N.Y. 2007, Indagro appears to accept with respect to its motion, that it is not entitled to a "stay as of right" under Rule 62. Rather, it claims that it satisfies the four factors relating to a *discretionary* stay under 62 (c), namely: (1) that there is a "substantial" possibility, although less than a likelihood, of success on appeal; (2) the alleged risk of "irreparable harm" absent the stay; (3) an alleged lack of harm to Bauche, if the stay is granted; and (4) an alleged public interest. The *Centauri* decision provides succinct guidance regarding the weighing of these factors in the context of Rule B. Indagro's motion provides no justification for a stay.[5]

As Indagro states, the court treats these factors "somewhat like a sliding scale." "The movant need not always show 'probability of success': instead, the movant need only present a substantial case on the merits...and show that *the balance of equities weights heavily in favor of granting a stay* [footnote citation omitted, emphasis added]." *In Re Adelphia Communications Corp. Debtors v. Adelphia Corp.*, 361 B.R. 337, 349 (S.D.N.Y. 2007). Thus, where the irreparable harm to the appellant would be severe, then the court may apply a more lenient test on the prospects of success on appeal. *Thapa v. Gonzales*, 460 F.3d 323, 336 (2d Cir. 2006). In that case, absent a stay of Immigration Board's Order, the appellant alien would have been barred, for 10 years, from returning to the U.S., whereas appellee Board would suffer no hardship). Clearly, in the instant case, Indagro will suffer no such hardship. As explained

---

[5] In *Centauri*, The District Court denied the stay. Bauche requests the Court to strike Indagro's impermissible, unsubstantiated statement that this decision was overturned on appeal and the stay granted. Memo in Support, p. 14, 15 fn 8. The only reported decision on Lexis and Westlaw, affirms the lower court on the merits of the vacatur, but makes no reference to the stay issue.

below, the balance favors Bauche. Accordingly, Indagro's burden to show a "substantial possibility" of success must be strictly applied.

### 1.     **Irreparable Harm**

"A showing of probable irreparable harm is the principal prerequisite for the issuance of a stay" and must be "neither remote nor speculative, but actual and imminent [internal quotation and footnote citation omitted]. *In Re Adelphia*, supra, at *347.[6] There is not, in the instant case, the extensive catalogue of potential and substantial injury that existed in *In Re Adelphia*. Adelphia's bankruptcy Plan, had it been allowed to proceed, would have involved the distribution of 111 million shares and $7 billion in cash to 24,000 parties. Absent a stay, that process would be irreversible.

Indagro urges that the release of the security will render the appeal on this issue moot (an "empty rite"), citing the 1950 decision in *Swift & Co. Packets et al. v. Compania Columbiana del Caribe, S.A.*, 339 U.S. 684, 70 S.Ct. 861 (1950). That case decided that the Court of Appeals had jurisdiction to entertain an interlocutory appeal from an order dismissing an attachment. It does not discuss the criteria for granting a stay. While the cases go both ways, "[a] majority of courts have held that a risk of mootness, standing alone, does not constitute irrevocable harm." *McDermott*, supra, at *10, citing *In re Adelphia*, at 347. *Adelphia* considered mootness significant, but in the context of the loss of appeal rights on the merits. Such loss is not the issue here, on a Rule B matter, where Indagro admittedly has ample opportunity to argue the merits of its claim in the arbitration. In the context of a Rule B matter, as the court ruled in *McDermott*, a plaintiff "cannot rely simply on the possibility or even probability that the [attached *res*] will

---

[6] The Court, while referring to Rule 8005 of the Federal Rules of Bankruptcy Procedure, clarified that courts "have followed the same standard for stays pending appeal to the Circuit Court." F.R.A.P. 8(a)(1)(A); *id.*, at *346.

leave the district during their appeal; instead, *they must show that, without the res, they will suffer irreparable injury.*" (Emphasis added), *Id.*, at *11.

In *Centauri Shipping, supra*, the court confronted the issue after vacating the attachment on the ground that the defendant had registered to do business in New York and was thus "present" for Rule B. Judge Sullivan had little difficulty in rejecting plaintiff's argument that if the security were removed from the jurisdiction, there was a risk that defendant would not be able to pay the eventual judgment. *Id.*, at *193, 194.

Next, Indagro would have the Court believe that "there is a tremendous risk of irreparable injury," especially "in view of Bauche's current financial condition." Indagro Memo in Support, at 1. Yet, Indagro's alleged basis for this assertion is illusory. The *TradeWind's* article, relied on for the baseless suggestion that the world knows that Bauche is not able to pay its demurrage bills, refers only to a *disputed* demurrage claim and the article itself appears to have been provoked by the action of Indagro's attorneys, Freehill, when they instituted a baseless (and now discontinued) Rule B action against Bauche, notwithstanding that Bauche was duly registered to do business in New York. *See* ¶ 10 of Declaration of Nicolas C.H. Bauche, CEO of defendant. As Mr. Bauche attests, defendant Bauche is in good financial standing, it has a gross turnover of nearly half a Billion dollars and its group turnover is close to one Billion dollars.

Bauche has requested the Court to strike Indagro's statements that the Court of Appeal's ultimately granted a stay in *Centauri*. There is nothing to explain the factors on which the court based its alleged decision or to show to what extent (if at all) they apply here. *See* ¶ 5, fn 4, above.

All we know is that in the instant case, plaintiff asserts a dubious claim for $541,000 demurrage (evidently the ship owner did not consider the claim meritorious or it would have

demanded payment from Indagro). It is somewhat absurd for Indagro to contend that a claim of this size—in the unlikely event Indagro were to prevail in London arbitration—raises a *per se* risk that Bauche would be unable to pay it. It is a matter of public record that Bauche, as of August 12, 2009, registered to do business in New York. Release of the attachment will not therefore divest the court of jurisdiction or impose any unusual barrier to enforcement.

Indagro also argues that there should be a more lenient test for irreparable harm for Rule B. However, the fact that some courts have considered a stay justified in other particular facts, has not created any such rule or doctrine. *The Shipping Company of India Ltd. v. Jaldhi Overseas Pte. Ltd.*, 2008 U.S. Dist. Lexis 49209 (S.D.N.Y. June 27, 2008) (stay granted without discussion or analysis). The fact is that courts frequently deny stays in Rule B actions. *Mason Agency Ltd. v. Eastwind Hellas S.A., Slip. Opinion,* 2009 WL 3109821 *(*September 29, 2009, S.D.N.Y.), MS TAGA BAY GmbH & Co. Containerschiff KG v. SA Independent Liner Service Pty Ltd.*, 2009 WL 513023 (February 27, 2009 S.D.N.Y.), *Centauri, supra, McDermott Gulf Operating Company v. Con-Drive, LLC*, 2009 WL 1855929 (June 29, 2009 S.D.Ala. In *Hawknet Ltd. v. Overseas Shipping Agencies, et al, 2009 WL 1309 854 (*May 6, 2009, S.D.N.Y*),* the court, like other courts, granted a (five-day) stay to give opportunity to seek stay from the Court of Appeals.

    2.    <u>**Harm to Bauche**</u>

Indagro's proposed supersedeas bond is inadequate and will not, as alleged, prevent injury to Bauche during the appeal process. As set forth in the Declaration of its CEO, Nicolas Bauche, harm to Bauche results from:

    1.    the disruption to Bauche's business from the continued restraint on transfers to and from its contract partners;

   2. the bond erroneously calculates two year' interest at 7% on $804,200, but this will not compensate Bauche for the transactions lost due to the withdrawal of this sum from its revenue producing trading;

   3. the bond likewise cannot compensate Bauche for the potential damage to its reputation if Indagro's pretense that there is concern regarding its financial condition is not refuted.

Bauche Decl. ¶¶ 13-17.

### 3. Indagro Cannot Show a "Substantial Possibility" of Success on Appeal

The Court's thorough and well-reasoned Opinion and Order is not likely to be reversed on appeal; it rests squarely on the evidence in the record and is consistent with well-established law in this Circuit. As explained, the balance of equities does not "weigh heavily" in favor of Indagro and it is entitled to no leniency in the strict standard for showing probable success on appeal.

#### (a) Low Prospect of Reversal on the Indemnity Issue – The Court Applied the Correct Standards, Burden and Law

On this issue, the Court ruled that Plaintiff did not carry its burden under Admiralty Rule E to demonstrate that it had an accrued cause of action, under its English-Law contract, as opposed to an unripe claim for indemnity. Mem. Order, pp. 15-18. While the Second Circuit will review *de novo* the Court's determinations of English law, it will do so based on the record. As for the facts in the record, Indagro does not dispute that it never paid any demurrage to the ship owner, under its charter party.

In reaching its determination, the Court was able to draw on well-established law of this Circuit. Bauche Memo. Law, Docket #16, pp. 18-21. "In general, the Courts of this Circuit have not been receptive to contingent indemnity claims as bases for maritime attachments." *Sonito*

9

*Shipping Co. Ltd v. Sun United Maritime Ltd.*, 478 F.Supp.2d 532, 543 (S.D.N.Y. 2007) (Haight J.) (vacating Rule B attachment, resolving conflicting presentations of English law and holding that contract provisions for indemnification, afforded no cause of action, until plaintiff had paid the underlying cargo claim). Indagro does not dispute that it had the burden to "present[] some evidence showing reasonable grounds" for the holding that it has a non-indemnity claim against Bauche under English law. Mem. Order, pp. 15, 16, citing, *Ullises Shipping Corp. v. FAL Shipping Co. Ltd*, 415 F.Supp.2d 318, 325 (S.D.N.Y. 2006) (overruled on other grounds by *Aqua Stoli*, 460 F.3d at 445). Rather, it argues that there was ample evidence in the record to meet its burden. Indagro Memo. in Support, p. 7.

Indagro relies first on its novel argument that the Sales Contract fails to expressly use the terms "indemnity" or "reimbursement" and therefore it should not be so construed. This is unlikely to impress the Second Circuit because identical wording – "Demurrage as per charter party" – was held by English Court of Appeal—in the seminal the English case, *Suzuki v. Companhia Mercantile Internacional* (1921) 9 Ll.LR. 171,. Reilly Decl., Docket #17, Exhs. 6 and 7—to be an indemnity. Where the essence of a "cost and freight" contract entitles a seller, such as Indagro, to reimbursement of post-loading expenses it found, based on common sense ("from the nature of things") that the right was one of indemnity. Indagro contends that the cases and treatises in evidence " confirmed the validity of Indagro's claim as a non-indemnity claim under English Law." *Id.* However, Indagro offers no explanation or support for this contention. Instead, it argues that Bauche's submissions support the proposition that "similar contracts" with the wording here at issue – "as per charter party" – may give rise to an independent right to demurrage. But, the Second Circuit will not be misled by the argument because, as Bauche's submissions explain, that "similar contract" was distinguished, because the wording was not

10

confined to demurrage "as per charter party" but had additional wording ("per day, pro rata") which, in the Court of Appeal's view, "clearly incorporates a rate, and no more." *Fal Oil Co. Ltd. v. Petronas (the Devon),* [2004] Lloyd's Rep. 282, 293 and 299, 2nd Col., Bauche Memo, pp. 23, 23 footnote 14; Reply Memo, pp. 8, 9, Docket ##16 and 18.

If the Second Circuit adopts the approach of Judge Haight in *Sonito Shipping*, analyze the authorities, it will see that *Suzuki* remains good law, and it will appreciate the strength of English authority, refuting Indagro's position. On the other hand, it might adopt the approach taken by the Court, and hold that the attachment must be vacated because the evidence in the record, including, the conflicting and "conclusory" opinion of the parties' respective English solicitors was insufficient to carry plaintiff's burden to show "reasonable grounds" for concluding that it had a non-indemnity claim. *See, T & O Shipping Ltd. Lydia Mar Shipping Co. S.A.*, 415 F.Supp.2d 310, 316 (S.D.N.Y. 2006) (holding that an attachment to secure indemnity claim, relating to potential third party cargo claim, should be vacated where the substantive questions relating to accrual of claim were yet to be determined under English law).

There is a substantial likelihood that Indagro's arguments will be rejected on this issue and its appeal denied.

    (b)    **Low Prospect of Success on the "Maritime" Contract Issue – The Court Correctly Applied the Law**

The Court concluded that the primary objective of Indagro's contract was not maritime; and its demurrage claim was not a severable maritime obligation. The Court correctly recited the test for maritime contract jurisdiction:

> In determining whether admiralty jurisdiction exists for a breach of contract claim, the Second Circuit has directed district courts to "look to the contract's 'nature and character to see whether it has reference to maritime service or maritime transactions.

(Internal quotation omitted), citing *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 312 (2d Cir. 2005) (quoting *Norfolk S. Ry. Co. v. James Kirby, Pty Ltd.*, 543 U.S. 14, 24, 125 S.Ct. 385, 393 (2004)). Mem. And Order, pp. 10-12. There are numerous authorities that support the Court's observation that "admiralty jurisdiction does not arise simply because a contract refers to a ship or transportation of goods by a ship." *Efko Food Ingredients Ltd. v. Pacific Inter-link SDN BHD*, 582 F.Supp.2d 466, 470 (S.D.N.Y. 2008); *see also, Aston Agro-Industrial AG v. Star Grain Ltd.*, No. 06-Civ.-02805 (GBD), 2006 WL 3755156, at *3 (S.D.N.Y. Dec. 20, 2006); *Shanghai Sinom Import & Export v. Exfin (India) Mineral Ore Co.*, 2006 AMC 2950, 2951 (S.D.N.Y. Oct. 5, 2006); *Lucky-Goldstar, Int'l (America) Inc. v. Phibro Energy Int'l, Ltd.*, 958 F.2d 58, 59 (5th Cir. 1992).

Indagro argues that the Court erred in holding that, whether a non-indemnity demurrage claim was maritime, "will depend solely on whether the plaintiff has paid someone not involved in the dispute"; and that this distinction is unsupportable because the nature of the claim remains that of demurrage, "a classic maritime obligation."

This argument is flawed. First, is mischaracterizes the Court's holding which, to the contrary, is directed to a non-indemnity obligation where demurrage is assumed to be due under the contract "regardless" of whether demurrage is demanded or paid. Mem. Order, p. 14; see, pp. 18-20 ("Accepting Indagro's characterization of its claim for the purpose of argument...."). The Court cited ample authority for its ruling that a claim, such as that asserted, would not meet the traditional definition of demurrage, namely, "liquidated damages owed by a charterer to a ship owner" (emphasis in original). Mem. Order at pp. 18-20, citing, *Tradhol Internacional, S.A. v. Colony Sugar Mills Ltd.*, No. 09-Civ.-0081 (RJH), 2009 WL 2381296, at *1, footnote 1 (S.D.N.Y. Aug. 4, 2009). The Court points out that Indagro's authority involved cases of

matured indemnity obligations. Mem. Order p. 19. The Second Circuit is unlikely to be impressed by Indagro's present effort to dispute that characterization. It is unlikely to overturn the Court's analysis, especially where Indagro has failed to cite a single authority that so much as discusses much less disagrees with that analysis. The Court's conclusion that the independent, stand-alone, Sales Contract obligation is non-maritime is firmly based on principle. Such an obligation is not payment to a ship owner for the services of a ship, it is merely an element of the *price* to be paid to a seller for the sale of fertilizer. The Second Circuit is likely to conclude—like the English Court of Appeal in *Suzuki*—that such an obligation is simply an element of "price" and affirm.[7]

Bauche also believes that it will be able to convince the Court that demurrage arising under the sales contract is *per se* not maritime and not within the Court's admiralty jurisdiction per the Second Circuit's holding in *The Lake Galera,* 60 F.2d 876 (2nd Cir. 1932). *See generally* Bauche Memo. pp. 7-17.

In short, Indagro's incorrect and unconvincing arguments are unlikely to prevail on appeal.

4.   **Public Policy**

Indagro has not made any showing under this requirement to justify a stay. There are, however, policy grounds for refusing a stay, including: (1) consistency with the intent of Rule E(c) to grant the defendant an immediate right to free its property, where plaintiff is unable to

---

[7] As Lord Justice Bankes observed:

> Of course if it is a contract of the latter description [*i.e.*, independent obligation], it really provides for an addition to the price of the rice depending upon whether the ship is or is not delayed in its discharge; and one does not quite see why the parties should enter into such a contract.

Reilly Exh. 6, column 2.

13

justify the attachment; and (2) the discouragement of motions and satellite appeals, over the issue of a stay in such cases, where Rule B attachment actions alone threaten to overload the Court's docket.

### 5. **Balancing the Factors**

Weighing all four factors, as above, it is clear that Indagro cannot carry its burden to justify a stay.

## CONCLUSION

Based on the foregoing, Bauche respectfully requests (a) that Indagro's motion for a stay be denied; (b) that the Indagro be ordered to immediately notify the garnishee's to release the attached funds; and (c) for such other and further relief as may be just.

Dated: New York, New York
      October 2, 2009

                                    Respectfully submitted,

                                    HILL, BETTS & NASH LLP
                                    Attorneys for Plaintiff

                                    By_____/s/_____
                                    James D. Kleiner (JK-6033)
                                    Mary T. Reilly (MR-6305)
                                    One World Financial Center
                                    200 Liberty Street
                                    26th Floor
                                    New York, New York 10281
                                    (212) 839-7000

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October 2009, the undersigned served a copy of the attached pleadings in this action: Memorandum of Law and Declaration of Nicolas C.H. Bauche.

A copy of the aforementioned document was e-mailed to:

        Freehill, Hogan & Mahar, LLP
        80 Pine Street
        New York, New York 10005
        Schultz@freehill.com
        venezia@freehill.com

By: _____
James D. Kleiner
HILL, BETTS & NASH LLP
Attorneys for Plaintiff Bauche S.A.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel. (212) 839-7000
Fax (212) 466-0514