773-08/GMV/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Gina M. Venezia
Pamela L. Schultz

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDAGRO S.A.,

    Plaintiff,

-against-

BAUCHE S.A.,

    Defendant.

08 Civ. 10388 (PGG)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR A STAY PENDING APPEAL**

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Plaintiff
Gina M. Venezia
Pamela L. Schultz
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005
Phone: (212) 425-1900
Fax: (212) 425-1901

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT

I.  THE TREND IN THE SECOND CIRCUIT IS TO GRANT STAYS OF THE VACATURE OF RULE B ATTACHMENTS .............................................................. 1

II. A BALANCING OF THE FACTORS CONSIDERED IN GRANTING A STAY WEIGHS IN FAVOR OF THE STAY PENDING APPEAL ............................................ 3

   A. The Stay is Warranted because Release of the Funds Will Result in Irreparable Injury to Indagro ............................................................................ 3

   B. Bauche Will Not Be Harmed By a Stay ............................................................ 4

   C. Indagro Has Shown a Substantial Possibility of Success on Appeal ............... 5

      1. The Court Misapplied English Law and Imposed Upon Indagro Too High of a Standard of Pleading a Valid Prima Facie Maritime Claim as the Addition of the Terms "Per Day Pro Rata" Do Not Have Talismanic Effect. ................................................................................... 6

      2. This Court Did Not Apply the Kirby and Folksamerica Analysis to the Claim and Therefore, Erred in Finding the Claim Was Not Maritime. ....... 7

   D. The Public Interest Weighs In Favor of Granting a Stay .................................. 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**PAGE**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 437
(2d Cir. 2006 .................................................................................................................. 10

Aston v. Agro Industrial AG v. Star Grain Ltd., 2006 U.S. Dist. Lexis 91636
(S.D.N.Y. 2006) ................................................................................................................8

Carolina Shipping Ltd. v. Renaissance Insurance Group Ltd.. 08 CV-4711 (BSJ)
(Sept. 10, 2008)..................................................................................................................1

Centauri Shipping v. Western Bulk Carriers, K.S, 528 F. Supp. 2d 186 (Jan. 30, 2008)..... 1, 3

Efko Food Ingredients Ltd. v. Pacific Inter-Link Sdn Bhd, 2008 U.S. Dist. Lexis 80861
(S.D.N.Y. Sept. 25, 2008)..................................................................................................8

Eitzen Bulk A/S v. Capex Industries, A/S 09 1987-CV (Jun. 09, 2009)..............................1

Fal Oil Co. Ltd. v. Petronas, 2004 L1.L.R. 282 ......................................................................6

Folksamerica Reinsurance Co. v. Cleanwater of New York, Inc.
413 F.3d 307 (2d Cir. 2005) ......................................................................... 7, 8, 9

Hawknet v. Overseas Shipping Agencies, 2009 A.M.C. 1241 (S.D.N.Y. 2009)....................3

In Re Adelphia Comm. Corp. v. ACC Bondholder Group, 361 B.R. 337, 347
S.D.N.Y. 2007)..............................................................................................................3, 5

Lucky-Goldstar, Int'l (America) Inc. v. Phibro Energy Int'l Ltd., 958 F.2d 58
(5th Cir. 1991)....................................................................................................................9

Mason Agency Ltd. v. East Wind Hellas S.A., 2009 U.S. Dist. LEXIS 89927
(S.D.N.Y. Sept. 29,
2009)...................................................................................................................................2

McDermott Gulf Operating Co. v. Con-Dive LLC, 2009 U.S. Dist. LEXIS 55063,
(S.D. AL. June 29, 2009)...................................................................................................2

*MS TAGA BAY GmbH & Co. v. S.A. Independent Liner Service Pty. Ltd.*, 2009 U.S. Dist.
LEXIS 15549 (Dec. 11, 2008) ..........................................................................................2

Noble Resources SA v. Sarl Quest Import, No. 08-civ. 3587 (GEL)................................8

Norfolk v. S. Ry. Co. v James Kirby, Pty. Ltd., 542 U.S. 14 (2004..........................7, 8, 9

Shanghai Sinom Import & Export v. Exfin (India) Mineral Ore Co., 2006 AMC 2950 (S.D.N.Y. 2006)..................................................................................................8

Suzuki v. Companhia Mercantile Internacional (1921) 9 Ll.L.R. 171 ……………...……………..6

Swift Tankers v. Compania Colombiana Del Caribe, S.A. 339 U.S. 684, 689 (1950)...............3

The Lake Galera, 60 F.2d 876 (2d Cir. 1932)……………………………………………..9

The Shipping Company of India, Lt. v. Jaldhi Overseas Pte. Ltd. (Cot. 15, 2008)................1, 5

Tradol Internacional S.A. v. Colony Sugar Mills Ltd. 2009 U.S. Dist. Lexis 67626 (Aug. 4, 2009)..................................................................................................9

**PRELIMINARY STATEMENT**

Plaintiff Indagro S.A. ("Indagro") submits this reply in response Bauche S.A.'s ("Bauche") opposition to Indagro's motion for a stay of this Court's order vacating the attachment. Indagro submits that consistent with the trend in the Second Circuit to grant stays of the vacature of Rule B attachments, the factors in this case weigh in favor of granting a stay. Immediate release of the funds will result in a pyrrhic victory to Indagro who will be left with an "empty rite". Moreover, Indagro has agreed to post a bond, and therefore, no harm will be visited on Bauche. Additionally, there is a substantial possibility that Indagro will succeed in carrying its burden on appeal of showing not only that it has a valid *prima facie* claim under English law, but also that when *Kirby* and *Folksamerica* are properly applied, the demurrage obligations assumed by Bauche are properly classified as maritime in nature.

**ARGUMENT**

I. **THE TREND IN THE SECOND CIRCUIT IS TO GRANT STAYS OF THE VACATURE OF RULE B ATTACHMENTS.**

The trend in the Second Circuit is to grant stays in Rule B actions. For example, in *Centauri Shipping, Ltd. v. Western Bulk Carriers, K.S.* (Jan. 30, 2008), a three-judge panel stayed the execution of a District Court order vacating a maritime attachment[1] (Ex. A).[2] Similarly, a different three judge panel granted a stay pending appeal of the District Court's oder vacating a maritime attachment. *The Shipping Corp. of India, Lt. v. Jaldhi Overseas Pte., Ltd.* (Oct. 15, 2008) (Ex. B). More recently, another three judge panel stayed the District Court's order vacating an attachment. *Eitzen Bulk A/S v. Capex Industries, A/S,* (Jun. 09, 2009) (Ex.C). In light of the Second Circuit's decision in *Centuari*, at least one court within this district granted

---

[1] Despite Bauche's assertion that Indagro's statements that the decision to overturn the District Court's denial of the stay was unsupported, the stay was in fact granted. See, Ex. A to Schultz Affidavit.

[2] All Exhibit references are to the Affidavit of Pamela L. Schultz, Esq. submitted herewith.

of stay of execution of its order vacating a maritime attachment. *See, Carolina Shipping Ltd. v. Renaissance Insurance Group Ltd.*, 08 CV-4711 (BSJ) (Sept. 10, 2008) (Ex. D).

Although Bauche asserts that courts frequently deny stays in Rule B actions, a review of those cases reveals that those decisions, which are not binding on this Court, are easily distinguishable on these facts. First, in *Mason Agency Ltd. v. East Wind Hellas S.A.*, 2009 U.S. Dist. LEXIS 89927 (S.D.N.Y. Sept. 29, 2009), the plaintiff sought payment for goods and services it had provided to the M/V YSTWYTH. The plaintiff identified Hellas, who was the "beneficial owner" of the vessel, as a direct defendant. The Court vacated the attachment on the factual basis that there was no evidence to support the claim that the plaintiff even had a contract with Hellas or had invoiced Hellas for those services – a situation not involved here. Moreover, the plaintiff in *Mason* did not even discuss the legal standards for the issuance of a stay, and the complaint and the submissions presented during the vacature stage also presented conflicting bases for the quantum of the claim. Finally, and perhaps most importantly, given what was described as "plaintiff's misleading pleadings", there was a strong public interest against rewarding such advocacy by extending an attachment which in all likelihood would never had issued with the forthright presentation of the facts. *Id.* at *21.[3]

Moreover, *McDermott Gulf Operating Co. v. Con-Dive, LLC*, 2009 U.S. Dist. Lexis 55063 (S.D.AL. June 29, 2009) involved the Southern District of Alabama's equitable vacature of an attachment and arrest of equipment on the plaintiff's offshore supply vessel in Alabama. The party seeking vacature had contracted to use that equipment in Mexico, but the plaintiff wrongfully removed the vessel from Mexico, bringing it to Alabama, where it then attached the

---

[3] *MS TAGA BAY GmbH & Co. v. S.A. Independent Liner Service Pty. Ltd.*, 2009 U.S. Dist. LEXIS 15549 (Dec. 11, 2008) did not involve a stay pending appeal and the basis for its citation is unclear. That case involved a motion by a named defendant with respect to alter ego/piercing the corporate veil allegations. The Court stayed enforcement of the attachment pending a decision on the motion to vacate. (Ex. E ).

equipment onboard. However, there was substantial evidence that the moving party would suffer substantial losses if the equipment was not released so it could be brought back to Mexico, and the plaintiff would not commit to posting a bond. Finally, reliance on *Hawknet v. Overseas Shipping Agencies,* 2009 AMC 1241 (S.D.N.Y. 2009) does not help Bauche because there, the basis for the vacatur motion involved alter ego allegations. The Court allowed substantial discovery on the alter ego issue, and after a review of the record found there were not enough facts to support the alter ego allegations.

## II.   A BALANCING OF THE FACTORS CONSIDERED IN GRANTING A STAY WEIGHS IN FAVOR OF THE STAY PENDING APPEAL.

The practice of the Second Circuit is to weigh the four factors in deciding whether to stay an order pending appeal. *In Re Adelphia Comm. Corp. v. ACC Bondholder Group,* 361 B.R. 337, 347 (S.D.N.Y. 2007). After balancing these factors, and in line with the Second Circuit's trend of granting stays of vacature orders, the propriety of a stay in this case will be apparent.

### A.   *The Stay Is Warranted because Release of the Funds Will Result in Irreparable Injury to Indagro.*

It can hardly be said that the release of the security being held by the garnishees is remote or speculative, but rather is actual and imminent or Bauche would not be opposing this motion. The concern that the release of an attachment would render the plaintiff's claims an "empty rite" has long been articulated by the Supreme Court in *Swift Tankers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950). Its guidance that the dissolution of an attachment without immediate appellate review would be an "empty rite" because the restoration of the attachment would only be "theoretically possible" cannot be ignored. *Id.* Perhaps it is these concerns that provided the Second Circuit Judges with a basis to grant stays in *Centauri, The Shipping Company* and *Eitzen.*

In further support of its argument that Indagro will not suffer any irreparable harm, Bauche relies upon the Declaration of Nicolas C.H. Bauche who attests that there is no risk of irreparable harm because of its position in good financial standing and registration to do business in New York. However, there is no statement that Bauche or any of its principals or officers have physical presence or assets in New York, which would enable the enforcement of the arbitration award here. Indeed, Bauche's own website www.bauche.com contains no indication that their company has any U.S. presence. Moreover, the declaration of Bauche's Chief Executive Officer only sets forth Bauche's annual turnover but makes no representation as to annual profit or to Bauche's assets, other than to state that Bauche is "well capitalized." Volume of business, or turnover, does not ensure that a company will earn a profit or that it has substantial assets. Indagro submits that a denial of the stay pending appeal renders Plaintiff's attachment an empty rite, and thus, that this factor weighs in favor of granting the stay.

### B.     *Bauche Will Not Be Harmed by a Stay.*

Bauche's assertions that it is being harmed by maintenance of the attachment have no sound basis. First, the alleged disprution to Bauche's business from the continued restraint of funds is belied by the fact that the last funds were attached at the beginning of February 2009, and Bauche was given notice of the attachment in early December. Nevertheless, Bauche waited until mid-April (over four months later), to move to vacate the attachment. Clearly, if the attachment was as disruptive as Bauche suggests, some affirmative steps would have been taken much sooner. Also, since Indagro has been fully secured by the restrained funds, there has been no further disruption of Bauche's financial transactions.

Moreover, if one takes Mr. Bauche's Declaration as to the financial condition of Bauche as accurate, the funds under attachment represent about less than 1% of Bauche's turnover of

$480 million[4] and the total turnover of its Group of companies. Additionally, although Mr. Bauche claims that the posting of a bond will not compensate Bauche for "transactions lost" due to the withdrawl of this sum from its recent producing trading, no such transactions are identified. Finally, Bauche claims that the bond cannot compensate it for the potential damage to its reputation if Indagro's pretense there is concern as to its financial condition is not refuted. However, this is a moot point because after the filing of Indagro's motion to stay, another article appeared in *TradeWinds* where Bauche representatives commented on the pending dispute with Mekatrade (Ex. F).[5]

Indagro has shown that harm will not be visited on Bauche by the continued restraint of funds which have been under attachment without any discernible disruption to Bauche's business. Since, according to Bauche's only declarant, only a minute fraction of Bauche's annual turnover is under attachment, there is no harm by the continued restraint of funds, and this factor weighs in favor of finding a stay.

### C.  *Indagro Has Shown a Substantial Possibility of Success on Appeal.*

As recognized by *In Re Adelphia*, the showing of "substantial possiblity" is "inversely proportional to the amount of irreparable injury Indagro will suffer absent the stay" and "[m]ore of one [factor] excuses less of the other." *In Re Adelphia*, 361 B.R. at 349. Thus, Indagro, as the moving party, does not necessarily need to show a probability of success, but instead may be granted a stay when it presents a substantial case on the merits and the involvement of a serious legal question, especially when balanced against other factors favoring a stay. *Id.* (citations omitted). This case presents not one, but two serious legal questions.

---

[4] The amount of $804,219.90 has been attached in this case.
[5] See also, the Affidavit of Pamela L. Schultz, Esq. (¶¶ 3-8) which confirms that the *TradeWinds* article was not prompted by Indagro's counsel and did not assert baseless claims.

NYDOCS1/338684.1                      5

*1.*   *The Court Misapplied English Law and Imposed Upon Indagro Too High of a Standard of Pleading a Valid Prima Facie Maritime Claim as the Addition of the Terms "Per Day Pro Rata" Do Not Have Talismanic Effect.*

The question is not as Bauche suggests whether Indagro's claim has accrued because, under English law, the claim is not one for indemnity. Rather, the question is whether Indagro pled a valid *prima facie* maritime claim in that its claim for demurrage incurred at the discharge port was an independent obligation. The authorities supoorting Indagro's position are already before this Court.

Bauche's argument that because the Indagro-Bauche contract contains the terms "Demurrage as per charter party" instead of "Demurrage as per charter party per day, pro rata", the former operates as an indemnity under the 1921 *Suzuki* case, but the latter does not under the 2004 decision of *Fal Oil Co. Ltd. v. Petronas*, is simply unsupportable legally and factually. First, it ignores the lenghty and well reasoned *Fal Oil* opinion which not only criticized *Suzuki*, but also noted that decision contained "brief reasoning" and that it was "difficult to see that there could be any basis for construing wording as sparse as 'demurrage as per charter-party'". [2004] Ll.L.R. 282, 298, 2d Col. Moreover, there were four specific reasons given in *Fal Oil* for Judge Mance's decision, not simply, as Bauche argues, because the contract contained the terms "Demurrage as per charter party per day, pro rata". [2004] Ll.L.R. 282, 299-300.

Bauche's position is also fallible because, as pointed out by Indagro, unlike in this case, *Suzuki* involved a contract between a buyer and the seller which contained the same terms as the charter party with regard to the time within which the steamer was to be discharged, a situation not present here and which was pointed out during oral argument by counsel for Indagro (Tr. at p. 38, referencing Reilly Ex. 6).[6] Counsel for Indagro also pointed out significant differences in

---

[6] The references to the Reilly exhibits refer to the declaration of Mary T. Reilly submitted with Bauche's Motion to Vacate. (ECF Doc. 17).

the terms of discharge by comparing the Indagro-Bauche contract (Reilly Ex. 1, Commencement of Discharging § D) which read "Time used prior to commencement of laytime to count as laytime" and the terms of the charter party which provided "Any time used prior to commencement of laytime, not to count, even if used." (de Klerk Ex. E,[7] between line 193 and 194[8]; Tr. at p. 38-39).

Additionally, even if one accepted the talismanic effect of the additional terms "per day pro rata" that Bauche posits, the contract at issue contained the phrase "As per Charter Party of the performing vessel to be advised upon nomination." (Reilly Ex. 1). And when Indagro nominated the M/V SWIFT SPLASH, it specified the demurrage rate as "Dem USD 37500 PDPR/HDWTS" which means "per day pro rata, half despatch[9] working time saved." (de Klerk Ex. C; Tr. at p. 26). Bauche accepted the nomination. (de Klerk, Ex. D).

Indagro submits that a review of the relevant submissions in the record will demonstrate the unsustainable position of Bauche that *Suzuki* controls under the facts of this case, and that Plaintiff has sustained its burden of demonstrating that it has a valid *prima facie* independent maritime claim for demurrage.

    2.    *This Court Did Not Apply the Kirby and Folksamerica Analysis to the Claim and Therefore, Erred in Finding the Claim Was Not Maritime.*

In the wake of the United States Supreme Court's decision in *Norfolk S. Ry. Co. v. James Kirby, Pty Ltd.*, 542 U.S. 14 (2004) and the Second Circuit's decision in *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307 (2d Cir. 2005), it is clear that

---

[7] The references to the de Klerk exhibits, refers to the exhibits attached to the Declaration of Andrew S. de Klerk in opposition to the motion to vacate. (ECF Doc. 13).
[8] The transcript erroneously reads lines 1993 and 1994. Counsel for both parties repeatedly tried to obtain corrections to numerous portions of the transcript, but many errors still exist in the 41 pages of the transcript.
[9] Despatch is the opposite of demurrage, and in this instance, means that if discharge operations were completed within a shorter time period than laytime permitted, Bauche would be compensated by Indagro at half the demurrage rate. There were circumstances when pursuant to the contracts between Bauche and Indagro, Bauche earned despatch. (See, *e.g.* de Klerk, Ex. H, p. 2).

courts should not erect strict limitations on the exercise of maritime jurisdiction, but rather should ask whether maritime commerce is implicated. *Kirby,* 542 U.S. at 24. Bauche argues that the Second Circuit is unlikely to overturn this Court's analysis because Indagro has not cited any authority that discusses or disagrees with its analysis. This argument ignores Indagro's citation to Judge Lynch's decision in *Noble Resourves Sarl SA v. Sarl Ouest Import,* No. 08-civ-3587 (GEL), where Judge Lynch was aware of defendant's argument the claim was for indemnity, but nevertheless found the existence of maritime jurisdiction without basing his decision on whether there had been payment to the vessel owner. In light of the evolving case law interpreting *Kirby* and *Folksamerica,* Indagro submits that this issue is a substantial one, which should be considered by the Second Circuit. Indeed, as Bauche points out, this Court based its decision on the "traditional definition of demurrage", (Opp. at p. 12) instead of, as *Kirby* and *Folksamerica* require, considering whether Indagro's claims clearly implicate maritime commerce and have reference to maritime service or transactions. *Kirby,* 543 U.S. at 24; *see also Folksamerica,* 2005 A.M.C. at 1751.

Moreover, none of the cases cited by Bauche will have any bearing on the Second Circuit's decision as to whether the demurrage obligation owed by Bauche represents amounts due as a result of delays occasioned during the discharge of a vessel. *Efko Food Ingredients Ltd. v. Pacific Inter-Link Sdn Bhd,* 2008 U.S.Dist. Lexis 80861 (S.D.N.Y. Sept. 25, 2008) involved a dispute over the failure to transfer title, not a maritime obligation. Similarly, *Aston v. Agro-Industrial AG v. Star Grain Ltd.,* 2006 U.S.Dist. Lexis 91636 (S.D.N.Y. 2006), involved claims which stemmed from a standard contract term assigning the risk of loss, not demurrage. *Shanghai Sinom Import & Export v. Exfin (India) Mineral Ore Co.,* 2006 AMC 2950 (S.D.N.Y. 2006), a decision by Judge Lynch, involved a claim for non-delivery and is undermined by Judge

Lynch's later decision in *Noble Resources, supra.* Finally, Judge Sullivan's decision in *Tradhol Internacional S.A. v. Colony Sugar Mills Ltd.*, 2009 U.S.Dist. Lexis 67626 (Aug. 4, 2009) denied a motion for reconsideration as moot since the plaintiff had filed a notice of appeal six months earlier. *Lucky-Goldstar, Int'l (America)Inc. v. Phibro Energy Int'l Ltd.*, 958 F.2d 58 (5th Cir. 1992) which is not binding on this Court, pre-dates *Kirby* and there was no contention that the plainitff sought to recover for only the maritime aspects of the contract.

Bauche again rests its case on 1932 pre-*Kirby* case of *The Lake Galera*, 60 F.2d 876 (2d Cir. 1932), which was discussed at length in the oral argument by Bauche but was not relied upon by this Court in its decision. That case involved the claim by a buyer that its seller had to pay demurrage the buyer had paid to the shipowner, *i.e.* a contribution claim, not an independent obligation. Moreover, unlike in this case, the contract between the buyer and seller did not appear to contain any demurrage terms.

Indagro submits that this particular issue of maritime jurisdiction is substantial, and especially important in the face of evolving case law since the decisions in *Kirby* and *Folksamerica*. Given this Court's narrow interpretation of those cases, Indagro submits that this factor weighs in favor of granting the stay.

### D.     The Public Interest Weighs In Favor of Granting a Stay.

Indagro maintains that the public interest factor weighs in its favor because the Rule B mechanism provides a basis for recover in a fluid international market. In this time of economic turmoil, the concern that a defendant, even if financially stable today, could crumble in a matter of days is heightened. A stay will preserve the status quo, and if an appeal from an incorrect decision involving an attachment does not bring with it the ability to maintain the status quo, confidence in the remedy itself is lost.

Moreover, the conclusory statements of Bauche that the intent of Rule E is to grant an immediate right to free property (Opp. at p. 3) ignore the longstanding authority of *Swift & Co.*, which explicitly recognized an immediate right to appeal the denial of an attachment and concern that attaching parties would be left with an "empty rite".

As appealing an argument is it may sound, that the rise in Rule B attachment actions and "satellite" appeals may overwhelm the Court's docket, this does not weigh against a finding of a stay. The Rule B remedy is an "inherent component" of the admiralty jurisdiction given to the federal courts. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006). Indagro vehemently denies that its claims are baseless and that its attachment is some form of tactic to pressure Bauche to settle as asserted by Mr. Bauche. Nevertheless, this allegation by Mr. Bauche does not lessen Indagro's rights to seek an attachment. *See, Aqua Stoli*, 460 F.3d at 443 (Rule B "permit[s] the attachment of assets wherever they can be found and [does] not [] require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.")

## CONCLUSION

Indagro submits that the factors in this case weigh in favor of preserving the status quo and granting a stay of the vacature of the attachment pending Indagro's appeal.

Dated: New York, New York
October 9, 2009

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Plaintiff

By: /s/ Pamela Schultz

Gina M. Venezia
Pamela L. Schultz
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005
Phone: (212) 425-1900
Fax: (212) 425-1901